IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRY PAULSEN, an individual,<br><br>        **Plaintiff,**<br><br>    v.<br><br>ABBOTT LABORATORIES, TAKEDA PHARMACEUTICALS OF NORTH AMERICA, INC., TAKEDA CHEMICAL INDUSTRIES, INC., and TAP PHARMACEUTICAL PRODUCTS, INC.,<br><br>        **Defendants.** | Case No. 1:15-cv-04144<br><br>Judge Gary Feinerman<br><br>Magistrate Judge Maria Valdez |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT
LABORATORIES' RULE 12(b)(6) MOTION TO DISMISS**

In May 2014, after plaintiff had attempted unsuccessfully for four years to prove any sort of negligence or wrongdoing against the defendants in this lawsuit relating to two injections of Lupron Depot® she received in 2004, she voluntarily dismissed her claims. Judge Gottschall therefore entered a judgment dismissing plaintiff's suit without prejudice. Just shy of one year later, plaintiff re-filed virtually the same complaint against Abbott Laboratories ("Abbott"), Takeda Pharmaceuticals North America, Inc. ("TPNA," now Takeda Pharmaceuticals U.S.A., Inc.), and non-existent companies Takeda Chemical Industries, Inc. and TAP Pharmaceutical Products Inc. ("TAP") (collectively "defendants"). Her claims are as meritless today as they were when first filed in 2010. They should be dismissed as a matter of law because: (1) they fail to state a claim upon which relief can be granted specifically against Abbott; and (2) publicly-filed documents from plaintiff's original action establish that relevant statutes of limitations have

run, thus time-barring the majority of plaintiff's claims.[1] Plaintiff's claims against Abbott

should also be dismissed with prejudice for the reasons stated in Memorandum of Law in

Support of Defendants Takeda Pharmaceuticals U.S.A., Inc., Takeda Chemical Industries, Ltd.,

and TAP Pharmaceutical Products Inc.'s Motion to Dismiss Pursuant to Rules 12(b)(5), 12(b)(6),

and 9(b), Sections II-V, which Abbott hereby joins in their entirety.

## BACKGROUND

### A.     Plaintiff Has Already Had Ample Opportunity To Pursue Her Claims

Plaintiff filed her initial complaint (virtually identical to this re-filed complaint) in the

Eastern District of New York on April 20, 2010. (*Cardenas & Paulsen v. Abbott Labs. et al.*,

No. 10-CV-1745-RRM-VVP (E.D.N.Y.), Dkt. 1.) Over the course of several years while the

original action pended, plaintiff, a fifty-five-year-old former registered nurse (*see Cardenas &*

*Paulsen*, No. 10-CV-05820-DAB (S.D.N.Y.), Dkt. 25-15, at 10, attached hereto as Ex. A), had

more than sufficient opportunity to litigate her claims, lodging multiple amended complaints

(one of which was dismissed for failure to state a claim), filing a motion to dismiss defendants'

statute of limitations defense (which was denied), and engaging in the exchange of written

discovery and discovery motion practice. In August 2013, after giving plaintiff almost a year's

notice, plaintiff's counsel moved to withdraw and Judge Gottschall granted the motion.

(*Cardenas & Paulsen*, No. 1:11-CV-04860 (N.D. Ill.), Dkt. 106-07.) Judge Gottschall informed

plaintiff exactly what she would have to do in order to continue *pro se*, including filing an

appearance within 30 days of the order granting her counsel's motion to withdraw (September

---

[1] As discussed below, these publicly-filed documents show that plaintiff's claim accrued on February 9, 2007 (or December 5, 2007 at the latest). A large number of non-publicly-filed documents from plaintiff's original action, including medical records and other documents, show that plaintiff's claims accrued as early as 2004-2005. These documents are not presented with this Rule 12(b)(6) motion, as they would convert it into a motion for summary judgment, but Abbott asserts that they exist and expressly reserves its right to argue in the future that plaintiff's claims accrued even earlier than February 9, 2007.

13, 2013). (*Id.*, Dkt. 107.) Plaintiff was warned that if she did not file an appearance within that time frame, her case would be dismissed for want of prosecution. (*Id.*)

The September 13, 2013 deadline came and went, and plaintiff failed to appear (either personally or through counsel) or seek an extension. Plaintiff also failed to attend an October 1, 2013 status hearing (or send a representative or ask for a continuance), and at that point Judge Gottschall dismissed the case for want of prosecution and entered judgment. (*Id.*, Dkt. 115-16.) On October 30, 2013, however, plaintiff's mother filed an *"Agreed"* Motion to Vacate Dismissal for Want of Prosecution on plaintiff's behalf. (*Id.*, Dkt. 122-23.) Despite defendants' opposition, plaintiff's motion was granted. (*Id.*, Dkt. 142.)

Subsequently, on May 28, 2014, plaintiff filed a notice of voluntary dismissal, and on May 30, 2014, Judge Gottschall dismissed the case without prejudice. (*Id.*, Dkt. 143-44.) Just short of a year later, on May 11, 2015, plaintiff filed a Motion to Reopen, which was denied *sua sponte* by Judge Gottschall. (*Id.*, Dkt. 146-47.) Plaintiff has now filed the instant complaint.

### B. Abbott Did Not Have Responsibility for Lupron When Plaintiff Allegedly Was Injected with the Drug, and Has None Now

In February and March 2004 (when plaintiff alleges that she was injected twice with Lupron, Compl. ¶ 19), the company responsible for Lupron business in the United States was TAP, a joint venture between Takeda America Holdings ("TAH") and Abbott (TAH and Abbott each owned 50%). (*See* Takeda 2008 Annual Report, at 10, excerpt attached hereto as Ex. B (*publicly available at* https://www.takeda.com/investor-information/annual/pdf/index/ar2008_en.pdf).) On April 30, 2008, Abbott and Takeda concluded their joint venture, and Abbott exchanged its 50% equity interest in TAP for the assets, liabilities, and employees related to TAP's Lupron business. (*See* Abbott 2008 Annual Report, at 47, excerpt attached hereto as Ex. C (*publicly available at* https://www.abbott.fr/wp-

content/uploads/2012/12/Abbott_Report_2008.pdf).)  Thus, when plaintiff filed her initial

complaint (in April 2010) there was some reason to include Abbott, which had assumed Lupron-

related liability.  In December 2012 (through January 1, 2013), however, Abbott split into two

separate, publicly-traded companies.  The pharmaceutical products business, including Lupron,

went to AbbVie Inc.  (*See* Abbott 2013 Annual Report, at 59, excerpt attached hereto as Ex. D

(*publicly available at* http://www.abbottinvestor.com/phoenix.zhtml?c=94004&p=irol-proxy).)

In sum, Abbott's only relationship to Lupron from 2004 to 2008 was that it was a 50% owner of

TAP, and TAP alone was responsible for Lupron business in the United States.  Today, as

Abbott's counsel has already explained to plaintiff' s counsel, Abbott has no relationship to

Lupron whatsoever.

### C. Plaintiff's Complaint Fails To Make Specific Allegations Against Abbott, and Documents She Filed in Her Previous Action Belie Her Current Allegations About When Her Claims Accrued

In the current complaint, plaintiff does essentially nothing to distinguish between the

defendants.  She alleges that TAP is a joint venture between Takeda and Abbott, with each

owning and controlling a 50% stake.  (Compl. ¶ 6.)  She also alleges that TAP is "directed and

controlled" by Abbott and Takeda, and that Abbott and TPNA are "responsible" for TAP's

actions.  (*Id.* at ¶¶ 7-8.)  And, she explains that references in the complaint to "Defendant,"

"Defendants," or "TAP" specifically include Abbott and TPNA.  (*Id.* at ¶ 9.)  She then makes a

series of non-specific allegations against TAP and "Defendants," and claims that "[a]ll

Defendants" are liable for her claims of negligence, strict products liability, strict liability-failure

to warn, breach of express and implied warranty, and fraudulent and negligent misrepresentation.

(*Id.* at ¶¶ 12-13, 15-18, 22-73.)

With regard to her injuries, plaintiff alleges that she was injected with Lupron on two

occasions, once in February 2004 and once in March 2004.  (*Id.* at ¶ 19.)  She alleges that she

"was treated for joint pain and was subsequently diagnosed with severe joint arthopathy in April of 2008" and "later diagnosed with osteoporosis in May of 2010[.]" (*Id.* at ¶ 20.) And, she claims that she "had no knowledge of her claims alleged [in the complaint], or facts sufficient to place her on inquiry notice of the claims set forth [in the complaint] within two years of the filing of the previous complaint." (*Id.* at ¶ 21.) Thus, plaintiff vaguely alleges that her claim accrued sometime between April 20, 2008 and April 20, 2010 (when her "previous complaint" was filed). But, publicly-filed documents from plaintiff's previous suit belie these current allegations.

On March 1, 2011, in response to Defendants' Motion to Dismiss Pursuant to Rule 12(b), plaintiff's then-counsel filed a Social Security Administration ("SSA") decision, issued to plaintiff, dated November 4, 2008. (*Cardenas & Paulsen*, No. 10-CV-05820-DAB, Dkt. 25-15 (Ex. A).) The decision was issued in response to an application from plaintiff filed on February 9, 2007, "alleging disability since April 1, 2005," and a written request for hearing filed on December 5, 2007. (*Id.* at 6.) The decision provides that, "The claimant complains of chronic pain and joint swelling with associated functional limitations, *which she believes to be side effects from Lupron therapy*."[2] (*Id.* at 9 (emphasis added).) This document shows that plaintiff's claims accrued *at least* as early as December 5, 2007.

## **LEGAL STANDARD**

"A motion to dismiss tests the sufficiency of a complaint, not the merits of a case." *RehabCare Grp. E., Inc. v. Certified Health Mgmt., Inc.*, No. 07 C 2923, 2007 WL 3334500, at *1 (N.D. Ill. Nov. 8, 2007). The Court must "accept all well-pleaded factual allegations in the complaint as true, drawing all reasonable inferences from those facts in [p]laintiff's favor." *Id.*

---

[2] The Administrative Law Judge made clear in rendering his decision that he was not making any findings regarding causation. *See Cardenas & Paulsen,* No. 10-CV-05820-DAB, Dkt. 25-15, at 9 (Ex. A) (As to the claimant's physical complaints, "which *she believes* to be side effects from Lupron therapy," the ALJ states "*No matter the cause, [it] is not for me to decide here . . . .*" (emphasis added)).

At the same time, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted)). As the Seventh Circuit has noted, "[a] complaint must allege facts to support a cause of action's basic elements; the plaintiff is required to do at least that much." *See Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

## ARGUMENT

Plaintiff's complaint is essentially the same as the threadbare complaint filed by her former counsel that was already dismissed once—almost three years ago—for failure to state a claim. The complaint should be dismissed against Abbott (again) because: (1) it fails to state a claim upon which relief can be granted by failing to allege any facts against Abbott, or facts sufficient to pierce the corporate veil against Abbott; and (2) documents of which the Court can take judicial notice show that the majority of plaintiff's causes of action are time-barred. The complaint should also be dismissed against Abbott for the reasons stated in Memorandum of Law in Support of Defendants Takeda Pharmaceuticals U.S.A., Inc., Takeda Chemical Industries, Ltd., and TAP Pharmaceutical Products Inc.'s Motion to Dismiss Pursuant to Rules 12(b)(5), 12(b)(6), and 9(b), Sections II-IV: (II) plaintiff's express and implied warranty claims are necessarily time-barred; (III) plaintiff's fraud claim does not meet the standards of Fed. R. Civ. P. 9(b); and (IV) plaintiff fails to state a claim upon which relief can be granted because she fails to meet the pleading standards of Fed. R. Civ. P. 8. Further, (V) plaintiff's complaint should be dismissed with prejudice. Abbott joins these sections of the Takeda entities' motion to dismiss.

**I.     Plaintiff Fails To State a Claim Upon Which Relief Can Be Granted by Failing To Allege Facts Against Abbott, or Sufficient To Pierce the Corporate Veil Against Abbott**

While plaintiff's complaint makes a number of allegations against TAP, it never provides any specific allegations against Abbott. It instead asserts that Abbott "owns and controls a [50%] stake of TAP," "direct[s] and control[s]" TAP in an undefined manner, and is "responsible" for TAP for unspecified reasons. (Compl. ¶¶ 6-8.) It then states that its use of the terms "Defendant," "Defendants," and "TAP" includes Abbott (*id.* at ¶ 9), and generally claims that "All Defendants" were somehow involved in each tortious action alleged in the complaint (*id.* at ¶¶ 22-73). As such, plaintiff has not specifically alleged that Abbott engaged in any wrongdoing, or attempted to distinguish between the defendants in any way. For this reason alone, plaintiff's claims against Abbott should be dismissed. *See, e.g.*, Wright & Miller et al., 5 Federal Practice & Procedure § 1248 (3rd ed.) ("[I]n order to state a claim for relief, actions brought against multiple defendants must clearly specify the claims with which each individual defendant is charged."); *Fromkin v. Indymac Bank FSB*, No. 10-CV-8014-PCT-PGR, 2010 WL 2541167, at *3 (D. Ariz. June 18, 2010) (same, granting motion to dismiss); *Turney v. Fifth Third Bank*, No. 09-2533-JWL, 2010 WL 1744670, at *6-7 (D. Kan. Apr. 29, 2010) (holding that plaintiffs could not "generally allege that this group of defendants harmed them as a group").

Plaintiff also fails to allege facts sufficient to pierce the corporate veil such that Abbott can be liable for any negligence on TAP's part. In order to pierce the corporate veil, a plaintiff must show (1) "such unity of interest and ownership . . . that the separate personalities no longer exist," and (2) "circumstances . . . such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Julin v. Advanced Equities, Inc.*, No. 13 C 9075, 2014 WL 5617001, at *4 (N.D. Ill. Nov. 4, 2014). Plaintiff has not pled sufficient facts to meet either requirement, and can never do so.

*First*, plaintiff has pled that *TAP* is "involved in and/or responsible for the research, development, testing, manufacturing and sales, distribution and/or marketing" of Lupron. (Compl. ¶ 8.) As to Abbott, the only *fact* pled is that Abbott "owns and controls a fifty percent (50%) stake in TAP." (*Id.* at ¶¶ 6-8.) That is insufficient to show a plausible claim against Abbott for any of TAP's alleged actions or omissions. *See Julin*, No. 13 C 9075, 2014 WL 5617001, at *4 (allegation that a parent company "owns and controls" a subsidiary is insufficient to state a claim against a parent company) (citing *Bright v. Roadway Servs.*, 846 F. Supp. 693, 700 (N.D. Ill. 1994)). *See also RehabCare Grp. E.*, No. 07 C 2923, 2007 WL 3334500, at *3 (explaining that plaintiff's allegation that, "upon information and belief, Defendants operate without respect for corporate formalities and in a manner that is inconsistent with their being separate and legal entities," was "precisely the type of formulaic, skeletal conclusion . . . found lacking" in other cases where the Northern District of Illinois found plaintiffs seeking to pierce the corporate veil had failed to adequately plead the alter ego doctrine).

*Second*, plaintiff has not even attempted to meet the second prong of the piercing test, showing that adhering to the fiction of separate corporate existence would sanction a fraud or promote injustice. *See Julin*, No. 13 C 9075, 2014 WL 5617001, at *4; *see also RehabCare Grp. E.*, No. 07C 2923, 2007 WL 3334500, at *3 (noting that, even if the Court were to deem plaintiff's conclusory allegations sufficient for the first requirement, plaintiff did not even allege that the second requirement had been satisfied). Plaintiff's complaint provides no reason why limiting her claims to the company that has assumed Lupron-related liabilities (notably *not any of the named defendants*) would constitute a fraud or injustice. Accordingly, plaintiff has failed to state a claim against Abbott.

## II. Documents of Which This Court Can Take Judicial Notice Show that a Majority of Plaintiff's Causes of Action Are Time-Barred

Under either Illinois or Georgia law,[3] a two-year statute of limitations applies to plaintiff's negligence, negligent misrepresentation, strict liability, and strict liability-failure to warn claims. *See* 735 ILCS 13/202; O.C.G.A. § 9-3-33. In her complaint, plaintiff artfully pled that she "had no knowledge of her claims . . ., or facts sufficient to place her on inquiry notice of [her] claims . . . within two years of the filing of the previous complaint." (Compl. ¶ 21.) Thus, as plaintiff's first complaint was filed on April 20, 2010 (*Cardenas & Paulsen*, No. 10-CV-1745-RRM-VVP, Dkt. 1), she alleges that she became aware of her claims somewhere between April 20, 2008 and April 20, 2010. But, even if plaintiff had become aware of her claims and filed her complaint on the same day (April 20, 2010), in the normal course these claims would have been time-barred by April 20, 2012, and certainly so when plaintiff filed her current complaint on May 11, 2015.

Plaintiff alleges, however, that she should receive the benefit of the Illinois Savings Statute, which allows actions that were voluntarily dismissed to be re-filed within one year after dismissal. (*See* Compl. ¶ 2 (citing 735 ILCS 5/13-217 ("[I]f . . . the action is voluntarily dismissed by the plaintiff . . . then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff . . . may commence a new action within one year or within the remaining period of limitation, whichever is greater[.]")).) The Savings Statute would, in theory, give plaintiff a year from the voluntary dismissal of her previous action (May 30, 2014) to commence a new action, even if the time period for bringing such action had

---

[3] Plaintiff filed the current complaint in Illinois, and Illinois courts (including federal courts sitting in diversity in Illinois) generally apply Illinois's statutes of limitations. In certain situations, however, Illinois courts will apply the statutes of limitations of the state where the cause of action arose, and plaintiff is a resident of Georgia, was injected with Lupron there, and her claims accrued there. For the purpose of Abbott's current arguments, both Illinois and Georgia's statutes of limitations operate to bar plaintiff's claims, and thus there is no need to determine at this time which state's statutes of limitations should apply.

expired.  (*See* 735 ILCS 5/13-217.)  But, even assuming that plaintiff could be entitled to the

benefit of the Savings Statute,[4] she still must show that she timely filed her original action, *i.e.*,

that her claims accrued sometime after April 20, 2008.  Based on statements that plaintiff has

previously made, reflected in public documents filed in her original action, she cannot do so.

Her claims are untimely.

In her previous action, plaintiff's counsel filed an SSA decision, issued to plaintiff, dated

November 4, 2008.  (*Cardenas & Paulsen*, No. 10-CV-05820-DAB, Dkt. 25-15 (Ex. A).)  The

decision was issued after plaintiff's initial February 9, 2007 application "alleging disability since

April 1, 2005" was denied.  (*Id.* at 6.)  Her request for hearing regarding that denial was filed on

December 5, 2007.  (*Id.*)  The SSA decision provides that plaintiff "complains of chronic pain

and joint swelling with associated functional limitations, *which she believes to be side effects*

*from Lupron therapy.*"  (*Id.* at 9 (emphasis added).)  Thus, plaintiff must have believed there was

a link between her injuries and her use of Lupron before she filed her application with the SSA

on February 9, 2007 (or at the very latest by the time she filed her request for hearing on

December 5, 2007).  It is therefore clear from this record that plaintiff's claims accrued before

April 20, 2008, and that her claims were time-barred when she filed her initial complaint, and are

still time-barred now.

Plaintiff filed the SSA decision in her original action (*id.*, Dkt. 25-15), and thus it is a

public document of which the Court can take judicial notice.  *See Palay v. United States*, 349

F.3d 418, 425 n.5 (7th Cir. 2003) ("[I]n resolving a motion to dismiss, the district court is

entitled to take judicial notice of matters in the public record."); *see also Wyatt v. Sanan*, 321

Fed. Appx. 499, 500 (7th Cir. 2008) (finding district court could have taken judicial notice of the

---

[4] Abbott expressly reserves its right to argue in the future that the Savings Statute does not apply here.

Seventh Circuit's opinion affirming plaintiff's conviction and sentence); *Balik v. Blitt and Gaines, P.C.*, No. 14 C 8702, 2015 WL 764013, at *1 (N.D. Ill. Feb. 21, 2015) (taking judicial notice of documents previously filed in plaintiff's bankruptcy case); *Foryoh v. Hannah-Porter*, 428 F. Supp. 2d 816, 820-22 (N.D. Ill. 2006) (taking judicial notice of plaintiff's previous lawsuits through public documents in the official records of the Clerk of the District Court). Accordingly, the Court can consider the SSA decision on plaintiff's disability claims without converting this motion to dismiss into a motion for summary judgment. *See Palay*, 349 F.3d at 425 n.5.

Because plaintiff's claims accrued at least as early as December 5, 2007, plaintiff's claims for negligence, negligent misrepresentation, strict liability, and strict liability-failure to warn are all barred by Illinois and Georgia's two-year statutes of limitations. *See* 735 ILCS 13/202; O.C.G.A. § 9-3-33. Contrary to plaintiff's previous arguments, the discovery rule cannot save her claim. The day that plaintiff told the SSA that she believed her chronic pain and joint swelling were "side effects from Lupron therapy," she demonstrated the requisite knowledge that her injury was "wrongfully caused" under Illinois's discovery rule, *see Castello v. Kalis*, 352 Ill. App. 3d 736, 744, 287 Ill. Dec. 815, 816 N.E.2d 782, 788 (2004), or that she knew or should know who "caused" her injury under Georgia's discovery rule, *see Rivell v. Private Health Care Sys., Inc.*, 887 F. Supp. 2d 1277, 1285 (S.D. Ga. 2012). Thus, under either discovery rule, plaintiff's claims for negligence, negligent misrepresentation, strict liability, and strict liability-failure to warn were untimely when filed in 2010, are time-barred now, and must be dismissed.

As for dismissal of the warranty and fraud claims specifically, Abbott expressly adopts the arguments of the Takeda defendants as referenced on pages 2 and 6, *supra.*

**CONCLUSION**

For all of the reasons stated above, and in Memorandum of Law in Support of Defendants Takeda Pharmaceuticals U.S.A., Inc., Takeda Chemical Industries, Ltd., and TAP Pharmaceutical Products Inc.'s Motion To Dismiss Pursuant to Rules 12(b)(5), 12(b)(6), and 9(b), Sections II-V, all of the claims against Abbott should be dismissed with prejudice. In sum, (1) all of the claims against Abbott should be dismissed because they fail to state a claim upon which relief can be granted by failing to allege specific facts against Abbott, or facts sufficient to pierce the corporate veil against Abbott; (2) plaintiff's claims for negligence, negligent misrepresentation, strict liability, and strict liability-failure to warn against Abbott should be dismissed because publicly-filed documents from plaintiff's original cause of action establish that the relevant statutes of limitation have run, and these claims are time-barred; (3) plaintiff's express and implied warranty claims against Abbott should be dismissed because they are time-barred; (4) plaintiff's claim for fraudulent misrepresentation against Abbott should be dismissed because it fails to meet the pleading standards of Fed. R. Civ. P. 9(b); and (5) all of the claims against Abbott should be dismissed because they contain nothing more than the kind of boilerplate language and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court has held will "not suffice" to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Further, (6) plaintiff's claims against Abbott should be dismissed with prejudice because she has already had four chances to state a claim, and this Court is "not required to give her another chance." *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1322-23 (7th Cir. 1998). For all of these reasons, the complaint should be dismissed with prejudice.

Dated: July 6, 2015                                Respectfully submitted,


                                                   /s/ *Kathryn L. Dore*
                                                   June K. Ghezzi (IL 6185506)
                                                   Nicole C. Henning (IL 6286386)
                                                   Kathryn L. Dore (IL 6306411)
                                                   JONES DAY
                                                   77 West Wacker Drive, Suite 3500
                                                   Chicago, IL 60601
                                                   Telephone:  312-782-3939
                                                   Facsimile:  312-782-8585
                                                   jkghezzi@jonesday.com
                                                   nhenning@jonesday.com
                                                   kdore@jonesday.com

                                                   *Attorneys for Defendants Abbott*
                                                   *Laboratories, Takeda Pharmaceuticals*
                                                   *U.S.A., Inc., Takeda Chemical Industries,*
                                                   *Ltd., and TAP Pharmaceutical Products Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2015, I electronically filed the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT**

**LABORATORIES' RULE 12(b)(6) MOTION TO DISMISS** with the Clerk of the Court

using the CM/ECF system, which will send notification to all counsel of record.


*/s/ Kathryn L. Dore*
Attorney for Defendants Abbott
Laboratories, Takeda Pharmaceuticals
U.S.A., Inc., Takeda Chemical Industries,
Ltd., and TAP Pharmaceutical Products
Inc.