ALAN S. LEVIN, M.D., J.D. (CA Bar No. 178790)
ALAN S. LEVIN, P.C.
Post Office Box 4703
Incline Village, Nevada 89450
Telephone: (775) 831-5603
flitequack@aol.com

TESFAYE W. TSADIK (CA Bar No. 108103)
LAW OFFICE OF TESFAYE W. TSADIK
1736 Franklin Street, Tenth Floor
Oakland, California 94612
Telephone: (510) 839-3922
Fax: (510) 444-1704
ttsakid@pacbell.net

MARTIN A. DOLAN (IL Bar No. 6198500)
10 So. LaSalle, Street, Suite 3702
Chicago, IL 60603
Telephone: (312) 676-7600
mdolan@dolanlegal.com

Attorneys for Plaintiff Terry Paulsen

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| TERRY PAULSEN, an individual, | Case No. 1:15-cv-04144 |
| Plaintiff, | PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO RULES 12(b)(5), 12(b)(6), AND 9(b) |
| v. | |
| ABBOTT LABORATORIES, an Illinois corporation, TAKEDA PHARMACEUTICALS OF NORTH AMERICA, INC., a wholly owned subsidiary of TAKEDA CHEMICAL INDUSTRIES LTD., an Illinois corporation, TAKEDA CHEMICAL INDUSTRIES, INC., an Illinois corporation, and TAP PHARMACEUTICAL PRODUCTS, INC., a New York corporation, | Date: September 8, 2015<br>Time: 9:00 a.m.<br>Place: Courtroom 2325 |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

I.  SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY ...................... 1

II. ARGUMENT ........................................................................................................................ 2

    A.    Applicable Legal Standards ................................................................................... 2

        1.    F.R.Civ.P. 12(b)(6) ...................................................................................2

        2.    Statute of Limitations...............................................................................2

    B.    Plaintiff's Complaint Was Timely Filed And Timely Re-Filed; Defendants' Statute of Limitations Defense Raises Factual Questions Which Are Not Amenable To Resolution Under Rule 12 On The Record Presented ...............................................................................................................3

        1.    State Two Two-Year Statute of Limitations Rule Applies........................3

        2.    State Delayed Discovery Rule Applies....................................................4

        3.    Defendants Seek Improperly to Foreclose the Facts Regarding Plaintiff's Discovery Of The Cause Of Illness In Defendants' Favor .........................................................................................................4

        4.    Plaintiff Alleges That She Sustained A Second Injury In May 2010 For Which She Has Also Timely Filed.........................................................5

        5.    Plaintiff's Claims For Breach Of Express And Implied Warranties Are Timely Filed......................................................................................6

        6.    Illinois' One Year Savings Statute Applies .............................................7

    C.    Plaintiff Has Alleged Sufficient Facts to State Claims Against Defendant Abbott Laboratories ("Abbott")....................................................................................7

    D.    Plaintiff Properly Served Defendants Takeda Chemical Industries ("TCI") And Takeda Pharmaceutical Products, Inc. ("TAP") ............................................9

        1.    Service of TCI...........................................................................................9

        2.    Service of TAP........................................................................................10

    E.    Plaintiff Has More Than Sufficiently Pleaded Fraudulent Misrepresentation...............................................................................................11

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

F.    Defendants, Who Have Answered Nearly The Same Complaint In The Prior Proceeding And Similar Complaints In Other Proceedings, Will Not Be Prejudiced By Having To Litigate Plaintiffs' Claims On The Merits, As The Law Strongly Favors ..................................................................................12

G.    Even If The Court Were To Find Any Portion Of Plaintiff's Complaint Deficient, She Should Be Given Leave To Amend ...............................................13

CONCLUSION ............................................................................................................ 13

**TABLE OF AUTHORITIES**

**Cases**

*Adair v. Baker Bros., Inc.,* 185 Ga.App. 807 (1998) .................................................................... 6

*Anderson v. Sybron Corp.,* 353 S.E.2d 816 (Ga.App. 1983) ......................................................... 5

*Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841 (7th Cir. 2008) ........................................... 2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................... 2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 2

*Cambridge Mut.Fire Ins. Co. v. City of Claxton,* 720 F.2d 1230 (11th Cir. 1983) ....................... 3

*Chicago Bldg. Design, P.C. v. Mongolian House, Inc*., 770 F.3d 610 (7th Cir. 2014) ................. 3

*Daniel v. Am. Optical Corp.,* 251 Ga. 166 (1983) ......................................................................... 6

*Domine v. Fulton Iron Works,* 76 Ill.App.3d 253 (1979) ............................................................ 10

*Electrical Contractors, Inc. v. Goldberg & O'Brien Electric Co.*, 29 Ill.App.3d 819
  (1975) ........................................................................................................................................ 8

*Everhart v. Rich's, Inc.*, 229 Ga. 798 (1972) ................................................................................. 4

*Fentress v. Triple Mining, Inc*., 261 Ill.App.3d 930 (1994) .......................................................... 8

*Fitchie v. Yurko*, 212 Ill.App.3d 216 (1991) .................................................................................. 8

*Foman v. Davis*, 371 U.S. 178 (1962) ......................................................................................... 13

*Freeman v. White Way Sign & Maintenance Co.*, 82 Ill.App.3d 884 (1980) .............................. 10

*Garden City Emples. Ret. Sys. v. Anixter Int'l, Inc.*, 2011 U.S. Dist. LEXIS 35261
  (N.D. Ill. 2011) .......................................................................................................................... 5

*GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) .............................. 5

*Gibson v. City of Chicago,* 910 F.2d 1510 (7th Cir. 1990) ............................................................ 2

*Gomez v. Toledo*, 446 U.S. 635 (1980) .......................................................................................... 2

*Hernandez v. Johnson Press Corp.*, 70 Ill.App.3d 664 (1979) ................................................... 10

*In re Johnson,* 133 Ill.2d 516 (1989) ............................................................................................. 8

*King v. Seitzingers, Inc.,* 160 Ga.App. 318 (1981) ........................................................................ 4

*Krupski v. Costa Crociere S.P.A.*, 560 U.S. 538 (2010) ................................................................ 9

*McMillan v. Collection Professionals Inc.*, 455 F.3d 754 (7th Cir. 2006) ...................................... 2

*Nguyen v. Johnson Machine & Press Corp.*, 104 Ill.App.3d 1141 (1982) ................................... 10

*Reiser v. Residential Funding Corp.*, 380 F.3d 1030 (7th Cir. 2004) ........................................ 2, 7

*Robert v. Anderson v. Kraft-Murphy Company, Inc.*, 82 A.3d 696 (Del. 2013) ........................... 10

*S Maggi v. RAS Development , Inc.*, 2011 Ill.App. LEXIS 532 (2011) ......................................... 9

*Seville Indus. Mach. v. Southmost Mach.*, 742 F.2d 786 (3d Cir. 1984) .................................... 11

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922 (7th Cir. 2015) .................................................................................................................................. 2

*Smith, Miller & Patch v. Lorentzson,* 254 Ga. 111 (1985) ............................................................ 6

*United States v. Lewis*, 411 F.3d 838 (7th Cir. 2005) .................................................................... 2

*Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004) ............................... 2, 3, 7

**Statutes**

735 I.L.C.S. 5/13-202 ...................................................................................................................... 3

735 I.L.C.S. 5/13-213(d) ................................................................................................................. 4

735 I.L.C.S. 5/13-217 ...................................................................................................................... 7

Del. Code, Tit. 8 § 278 .................................................................................................................. 10

Del. Code, Tit. 8 § 279 .................................................................................................................. 10

*O.C.G.A.* § 9-3-33 ...................................................................................................................... 3, 6

**Rules**

F.R.Civ.P. 12(b)(5) .......................................................................................................................... 8

F.R.Civ.P. 8(a) .............................................................................................................................. 12

F.R.Civ.P. 9(b) ......................................................................................................................... 11, 12

F.R.Civ.P. 12(b)(6) .................................................................................................................. passim

## I. SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff Terry Paulsen received one shot of Lupron Depot on February 11, 2004, and another on March 16, 2004, to treat her endometriosis. In the ensuing months, she began experiencing inflammation and swelling of her joints, pain in her joints and muscles, fatigue and memory impairment. These symptoms continue to the present. In addition, in May 2010 she was diagnosed for the first time with osteoporosis, a separate and distinct malady caused by her Lupron injections.

Ms. Paulsen saw various specialists and treating physicians for her symptoms, but not only did they not link her illness to her injections, some of them dismissed Lupron as the cause of her illness and considered her primary illness to be a mood disorder with secondary gain issues. It was not until April 30, 2008 that Dr. Michael Heard, a reproductive endocrinologist, informed her that her joint arthopathy was likely attributable to her Lupron injections. (*See* Affidavit of Plaintiff Terry Paulsen, attached hereto as Exhibit 1.)

Having so been informed, plaintiff filed suit against defendants in the Eastern District of New York on April 20, 2010, and amended her complaint on October 20, 2011, wherein she alleged her diagnosis of osteoporosis on or around May 2010. By agreement of the parties, the case was transferred to the Southern District of New York. Thereafter, the case was transferred to the Northern District of Illinois upon a motion by defendants.

On October 7, 2011 the Court granted a motion by defendants to dismiss plaintiff's first amended complaint on alleged insufficiency of the pleadings and statute of limitations grounds, but granted plaintiff leave to amend.

Plaintiff filed a Second Amended Complaint on October 20, 2011, and defendants answered on November 7, 2011.

In August 2013, plaintiff's counsel withdrew.

On May 30, 2014, plaintiff filed a voluntary notice of dismissal, and on May 28, 2014, the Court, (Honorable Judge Joan Gottschall) dismissed the case without prejudice.

On May 11, 2015, plaintiff filed a new complaint which is the subject of defendants' instant motion to dismiss.

## II. ARGUMENT

### A. Applicable Legal Standards

#### 1. F.R.Civ.P. 12(b)(6)

A motion under F.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). On such a motion, the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *McMillan v.Collection Professionals Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). To state a claim, a complaint must allege facts that, if true, would raise a right to relief above the speculative level showing that the claim was plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### 2. Statute of Limitations

The statute of limitations is an affirmative defense typically unsuitable for consideration at the motion to dismiss stage. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). This is because a complaint need not anticipate nor overcome affirmative defenses, including one based on the relevant statute of limitation. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004); *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922 (7th Cir. 2015); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Accordingly, where a defendant raises the statute of limitations as an affirmative defense at the motion to dismiss stage, a court can only dismiss a claim "when [the] complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th

Cir. 2005)). Judge Easterbrook put it this way: "Only when the plaintiff pleads itself out of court — that is, admits all the ingredients of an impenetrable defense — may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)" on statute of limitations grounds. *Xechem*, 372 F.3d at 901. *Accord*, *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014).

### B. Plaintiff's Complaint Was Timely Filed and Timely Re-Filed; Defendants' Statute of Limitations Defense Raises Factual Questions Which Are Not Amenable to Resolution Under Rule 12 on the Record Presented

Defendants ask the Court to act contrary to well-settled Seventh Circuit law which strongly disfavors resolving fact-intensive statute of limitations arguments on Rule 12 motions. (*See* authorities, above) Here, defendants do not contest plaintiff's calculation of the applicable time limits—under Georgia's general two year personal injury statute, the delayed discovery rule, or the Illinois Savings Statute (permitting a plaintiff to re-file voluntarily dismissed claims within one year) — but rather, insist, based on a narrow and self-serving interpretation of a single piece of hearsay, that the Court should decide the delayed discovery rule does not apply. Defendants' argument is both legally unsound and factually unsubstantiated.

#### 1. State Two Two-Year Statute of Limitations Rule Applies

As a threshold matter, the Court should apply state law in analyzing defendants' statute of limitations argument. *See, e.g., Cambridge Mut.Fire Ins. Co. v. City of Claxton,* 720 F.2d 1230, 1232 (11th Cir. 1983) ("[S]tate statutes of limitations are substantive laws and must be followed by federal courts in diversity actions."). Defendants acknowledge that the Court should apply Illinois statute of limitations law, which in fact means applying Georgia statute of limitations law, because plaintiff's claims arose in Georgia where she was injected with Lupron. (Def's Memo, Dktn. No. 29, at 9, fn. 3.) In any event, both Georgia and Illinois observe two

PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS  *PAULSEN V. ABBOTT LABS, ET AL.*, NO. 1:15-CV-04144

year personal injury statutes of limitations. (For Georgia, see *O.C.G.A.* § 9-3-33; for Illinois, see 735 I.L.C.S. 5/13-202).

### 2. State Delayed Discovery Rule Applies

Under Georgia law, "[a] cause of action will not accrue . . . until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that the injury may have been *caused* by the defendant's conduct." *King v. Seitzingers, Inc.,* 160 Ga.App. 318, 319 (1981) (emphasis added); *accord*, *Everhart v. Rich's, Inc.*, 229 Ga. 798, 802 (1972). Illinois' delayed discovery rule operates similarly.[1] In the present case, plaintiff did not discover until April 30, 2008 when she saw Dr. Michael Heard that her Lupron injections may have caused her joint arthropathy (*See* Affidavit of Ms. Paulsen at Exhibit 1). She then filed her initial complaint within two years of that date (on April 20, 2008), within both Georgia's and Illinois' delayed discovery time frames.

### 3. Defendants Seek Improperly to Foreclose the Facts Regarding Plaintiff's Discovery of the Cause of Illness in Defendants' Favor

Seeking improperly to foreclose the facts in their favor, defendants argue simply that because the Social Security Administration issued a decision in November 2008 ascribing to plaintiff the suspicion that her chronic pain and joint swelling might be side effects from Lupron therapy, she must have been on notice that Lupron caused her illness as of the date she filed her disability application or requested a hearing, i.e. in February or December of 2007, respectively. (Def's Memo, Dkt. No. 26, at 10.) However, even if it were proper for the Court to reach the facts of defendants' statute of limitations defense at this stage (which it is not), there is no

---

[1] Under Illinois law, "the plaintiff may bring an action within 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the personal injury, death or property damage, but in no event shall such action be brought more than 8 years after the date on which such personal injury, death or property damage occurred." 735 I.L.C.S. 5/13-213(d).

evidence before the Court as to (a) whether plaintiff actually made this statement or one similar, (b) if not verbatim, how she may have qualified it, (c) what doubts she still harbored, (d) what effect other people's statements and actions (including, e.g., both the makers of Lupron and her doctors) had on her awareness and doubt,[2] (e) what a diligent plaintiff would have discovered in the circumstance of this case; (f) what actions, if any, plaintiff may have taken to confirm or dispel her suspicions, and (g) whether such actions reinforced her undermined her suspicions. Importantly, inadmissible hearsay is not judicially noticeable "because courts must 'strictly adhere to the [ ] Federal Rules of Evidence before taking judicial notice of pertinent facts,'" *Garden City Emples. Ret. Sys. v. Anixter Int'l, Inc.*, 2011 U.S. Dist. LEXIS 35261, *44-45 (N.D. Ill. 2011), quoting *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997).

In point of fact, according to Ms. Paulsen, prior to her consultation with Dr. Heard in Spring 2008, no doctor could tell her the cause of her illness, and a number of the specialists and treating physicians she saw explicitly told her that Lupron was not the cause. (*See* Affidavit of Terry Paulsen at 2:13-22, Exhibit 1.) While she could amend her complaint to add this specificity, her complaint is clear and unambiguous in this regard. (*See* Complaint, ¶ 21.) At most, defendants have introduced a factual issue to be litigated and resolved by the trier.

### 4. Plaintiff Alleges that She Sustained a Second Injury in May 2010 for Which She Has Also Timely Filed

Under Georgia law, when a person is injured by a toxic substance and suffers at first only mild symptoms, a new limitation period begins to run if she is later diagnosed with a serious, separate and distinct latent injury caused by the same exposure. *Anderson v. Sybron Corp.,* 353

---

[2] For instance, plaintiff alleges that defendants fraudulently concealed and misrepresented the effects of Lupron, including by assuring both medical professional and the public directly that Lupron had been tested and found to be safe and effective for treatment of, *inter alia*, endometriosis and uterine fibroids (Complaint, ¶s 17, 18, and 60), and that plaintiff relied on

PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS    *PAULSEN V. ABBOTT LABS, ET AL.*, NO. 1:15-CV-04144

S.E.2d 816, 817-18 (Ga.App. 1983), *aff'd sub nom*, *Sybron Corp. v. Anderson,* 310 S.E.2d 232 (Ga. 1983) (two-injury rule applied to claim for eye cataracts allegedly suffered from exposure to ethylene oxide which had previously caused plaintiffs to suffer from various other physical ailments). Such is the case here, where plaintiff alleges that defendants are separately liable for her osteoporosis, first diagnosed in May 2010, separate and distinct from her joint pain. (Complaint, ¶ 20, 24, 34, 42.)

### 5. Plaintiff's Claims for Breach of Express and Implied Warranties Are Timely Filed

Contrary to defendants' argument (Def's Memo, Dkt. No. 29, at 9-10), plaintiff's breach of warranties claim in this case is governed by Georgia's personal injury statute of limitations and related law, not by the statute of limitations pertaining to sales contracts, because those claims are also grounded on personal injury. (Def's Memo, Dkt. No. 29, at 9-10.) This means that the delayed discovery rule applies to save plaintiff's breach of warranties claims too. "[A]n action to recover for personal injuries is, in essence, a personal injury action, and, regardless of whether it is based upon an alleged breach of an implied warranty or is based upon an alleged tort, the limitations statute governing actions for personal injuries is controlling."). *Adair v. Baker Bros., Inc.,* 185 Ga.App. 807, 808 (1998).

Although defendants do not appear to challenge plaintiff's products liability claim on statute of limitations grounds, plaintiff's products liability claim must also be treated under Georgia's two year statute of limitations and related laws: *See*, *Smith, Miller & Patch v. Lorentzson,* 254 Ga. 111, 111 (1985), citing *Daniel v. Am. Optical Corp.,* 251 Ga. 166, 167 (1983) (holding that O.C.G.A. § 9-3-33 applies to personal injury actions brought under theories of strict liability and negligence). "The nature of the injury sustained in this case is an injury to the person, and O.C.G.A. § 9-3-33 therefore applies to [plaintiff's] products liability" claims. *Id*.

---

such assurances. (Complaint, ¶ 63.)

6

Here, as discussed above, plaintiff brought her claims within two years of discovering that Lupron likely caused her arthropathy, and timely added a claim based on her subsequent development of osteoporosis.

### 6. Illinois' One Year Savings Statute Applies

Defendants do not dispute the applicability of Illinois' Savings Statute, 735 I.L.C.S. 5/13-217, according to which plaintiff was permitted to re-file her voluntarily dismissed claims within one year, as she in fact did. (See Complaint, ¶ 2.) Rather, defendants argue only that the Savings Statute does not help plaintiff because her original complaint was not timely filed. (Defs' Motion, Dkt. No. 26, at 9-10.) However, as discussed above, this is at best a factual question which is not amenable to resolution under Rule 12. *Reiser*, *supra*, 380 F.3d at 1030; *Xechem*, *supra*, 372 F.3d at 901.

### C. Plaintiff Has Alleged Sufficient Facts to State Claims Against Defendant Abbott Laboratories ("Abbott")

Contrary to Abbott's contention, plaintiff has sufficiently alleged that Abbott is liable to plaintiff for participating in the development, marketing and distribution of Lupron, the drug responsible for plaintiff's injury. Defendants conveniently ignore plaintiff's specific issues, including:

- Abbott, through TAP Pharmaceutical Products, Inc. ("TAP"), its joint venture with Takeda Chemical Industries, Ltd. ("Takeda"), at all relevant times participated in marketing and selling Lupron to physicians in the state of Georgia (Complaint, ¶¶ 6, 7);

- Abbott, through TAP, at all relevant times was "involved in and/or responsible for the research, development, testing, manufacturing and sales, distribution and/or marketing of the drug known as Lupron, …" (Complaint, ¶¶ 8, 9); and

- TAP (alleged to have been directed and controlled by Abbott and Takeda) took no

7

corrective action despite having been aware for over a decade that Lupron caused bone loss, but instead, continued to represent to the public that Lupron was safe (Complaint, ¶¶ 6, 7, 13, 17).

As plaintiff alleges direct participation and responsibility by Abbott, there is no need to allege that its corporate veil is pierced.

Under Illinois law, a joint venture is an association of two or more persons to carry out a single enterprise for profit. *Fitchie v. Yurko*, 212 Ill.App.3d 216, 226 (1991). Joint ventures are governed by partnership principles. *In re Johnson,* 133 Ill.2d 516, 526 (1989). Therefore, as in a partnership, each member of a joint venture can be held liable to a third party for acts of the other joint ventures committed in the course of the enterprise. *Fentress v. Triple Mining, Inc*., 261 Ill.App.3d 930, 940 (1994). Although formation of a joint venture does not require a formal agreement and can be inferred from the parties' conduct (*Electrical Contractors, Inc. v. Goldberg & O'Brien Electric Co.*, 29 Ill.App.3d 819, 822 (1975)), Defendant Abbot expressly admits that it operated a joint venture with Takeda. (Def's Memo, Dkt. No. 26, at 3)

While Abbott may describe the structure of its joint venture slightly differently than plaintiff describes it, Abbott in no way substantively challenges plaintiff's allegation that it shared responsibility for Lupron's development and marketing. Quite the contrary, Abbott acknowledges that it operated a joint venture with Takeda lasting until April 30, 2008 (i.e. years after plaintiff was injected with Lupron in February and March 2004), and that "when plaintiff filed her initial complaint (in April 2010) there was some reason to include Abbott, which had assumed Lupron-related liability." (Def's Memo, Dkt. No. 27, at 3 and 4) The fact that Abbott may have terminated its joint venture with Takeda in 2008 does not extinguish Abbott's liability for its joint venture activities. Similarly, Abbott cites no legal authority for its assertion that simply because in 2012 it may have "split into two, separate, publicly traded companies" it can

escape liability. (*Id.*)

### D. Plaintiff Properly Served Defendants Takeda Chemical Industries ("TCI") and Takeda Pharmaceutical Products, Inc. ("TAP")

Defendants seek the dismissal of TCI and TAP under F.R.Civ.P. 12(b)(5) on the alleged grounds that neither is an entity susceptible of service. Specifically, they claim that plaintiff does not name TCI in the complaint, that it is not a corporation, and that it was dismissed previously. They additionally claim that TAP has been dissolved and cannot be served. (Def's Memo, Dkt. No. 29, at 3-4, 8-9.) These arguments lack factual and legal merit.

#### 1. Service of TCI

As an initial matter, defendants are simply incorrect in stating that plaintiff does not name TCI in her complaint. Rather, plaintiff refers to this entity as "Takeda," as a quick glance at her complaint (¶ 5) shows. For clarity, plaintiff will adopt defendant's acronym, "TCI" for the purposes of this discussion. Second, it is of no moment that TCI is not a corporation. It is an entity susceptible of suit. Lastly, the Court's prior dismissal of TCI was not on the merits, but based on the failure to serve. In contrast, TCI has now been properly served and joined.

Even if plaintiff has the wrong name, she has the right party, and she should be allowed to amend to fix what amounts to, at most, a scrivener's error. *See Krupski v. Costa Crociere S.P.A.*, 560 U.S. 538 (2010) permitting impleading of a defendant long after the statute of limitations had passed based on a mere mistake in naming the correct defendant.[3] *Accord*, *S Maggi v. RAS Development , Inc.*, 2011 Ill.App. LEXIS 532 (2011).

---

[3] The Supreme Court reasoned, "[b]ecause the complaint made clear that [the passenger] meant to sue the company that 'owned, operated, managed, supervised and controlled' the ship on which she was injured, [citation], and also indicated (mistakenly) that Costa Cruise performed those roles, [citation], Costa Crociere should have known, within the Rule 4(m) period, that it was not named as a defendant in that complaint only because of [the passenger's] misunderstanding about which 'Costa' entity was in charge of the ship—clearly a 'mistake concerning the proper party's identity.'" *Krupski*, 560 U.S. at 554.

9

### 2. Service of TAP

Defendants assert that TAP is not susceptible of service simply because in July 2008 it "was merged into TPNA and dissolved as a corporation." (Def's Memo at 3.) Defendants, however, are incorrect as a matter of law. Under Illinois law, a corporate merger does not absolve the surviving corporation of the liability of the dissolved corporation. Rather, if the transaction is solely a transfer of assets, the successor corporation will not be liable because it did not participate in placing the offending product into the stream of commerce. *Domine v. Fulton Iron Works,* 76 Ill.App.3d 253 (1979); *Nguyen v. Johnson Machine & Press Corp.*, 104 Ill.App.3d 1141 (1982). There are, however, three exceptions to this general rule: (1) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (2) when the purchaser is merely a continuation of the seller; and (3) when the transaction occurs for the fraudulent purpose of escaping liability for the seller's obligations. *Hernandez v. Johnson Press Corp.*, 70 Ill.App.3d 664 (1979); *Freeman v. White Way Sign & Maintenance Co.*, 82 Ill.App.3d 884 (1980).

In the present case, defendants acknowledge that TAP "merged into TPNA and dissolved," fitting the definition of at least exception (1) above. And even if defendants try to back away from this description, plaintiff should be entitled to discovery to probe the nature of the merger.

In addition, defendants misstate Delaware law in asserting that "[u]nder Delaware law, dissolved corporations continue only for a period of three years from the date of expiration/dissolution as a corporate body for purpose of prosecuting and defending suits". (Def's Memo at 3-4.) In *Robert v. Anderson v. Kraft-Murphy Company, Inc.*, 82 A.3d 696 (Del. 2013), the Delaware Supreme Court held that "[n]othing in [Del. Code, Tit. 8] § 278 operates as a statute of limitations that would bar claims or extinguish a dissolved corporation's liability to

10
PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS   *PAULSEN V. ABBOTT LABS, ET AL.*, NO. 1:15-CV-04144

third parties." *Id.* at 705. The Court continued: "To the contrary, § 279 enables a dissolved corporation to (through a receiver) 'sue and be sued' after the expiration of the § 278 three year period. That is, § 279 establishes that the expiration of § 278's three year period does not extinguish the dissolved corporation's underlying liability." *Id*. at 705 (emphasis in original).

There is no dispute that plaintiff in fact served the surviving corporation, TPNA's, registered agent. (Def's Memo, Dkt. No. 29, at 8.) Because TAP dissolved into TPNA, TPNA is the logical entity to serve on TAP's behalf, in order to give effect to the Delaware rule. For all of these reasons, plaintiff has effectively served TAP.

### E. Plaintiff Has More Than Sufficiently Pleaded Fraudulent Misrepresentation

Defendants contend that plaintiff's fraud and misrepresentation claims fail because they are not pled with particularity as required under F.R.Civ.P. 9(b).[4] Specifically, defendants assert that plaintiff's Complaint does not set forth the time, place and contents of the alleged false representations, the identity of the party making the alleged false statements or the consequences thereof. (Def's Memo, Dkt. No. 29, at 10-11) Defendants are simply incorrect, as an examination of plaintiff's Complaint shows. Specifically, plaintiff alleges:

| | |
|---|---|
| **Who:** | "Defendants …their agents, servants, and/or employees" (Complaint, ¶ 59); |
| **What:** | "made false and fraudulent misrepresentations to the medical community and to users of Lupron through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, and notice letters, beginning in the 1990's and continuing into the 2000's [including but not limited to] assurances that Lupron had been tested and found to be |

---

[4] F.R.Civ.P. 9(b) requires that in alleging fraud, "a party must state with particularity the circumstances constituting fraud." A plaintiff must "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. v. Southmost Mach*., 742 F.2d 786, 791 (3d Cir. 1984). The pleading must set forth the nature of alleged misrepresentations, but it need not describe the precise words used or the exact time, place, or date of the fraudulent conduct. *Id.* If time, place, and date are not pled, however, a plaintiff must "use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

a safe and effective treatment for, among other things, eliminating the incidence and symptoms of endometriosis and uterine fibroids." (¶¶ 59-60) Defendants also "failed to adequately apprise Plaintiffs or Plaintiffs' physicians of" a litany of side effects recited in the Complaint (¶ 61), and thereby "induc[ed] women to seek and accept Lupron as treatment for endometriosis and/or uterine fibroids and by inducing the medical community to prescribe, dispense, purchase, administer, and otherwise disseminate Lupron to women" (¶ 62);

**To Whom**: Plaintiff, her physicians, the public and the medical community at large, and to the FDA and other government agencies in seeking approval for the use of Lupron (¶¶ 18, 59, 61-62, 64);

**When**: Beginning in the 1990s and continuing into the 2000s (¶59);

**Where**: In Georgia, where plaintiff resided and was injected, among other states. (¶¶ 7.)

As such, plaintiff has more than met any heightened pleading requirement under F.R.Civ.P. 9(b).

### F. Defendants, Who Have Answered Nearly the Same Complaint in the Prior Proceeding and Similar Complaints in Other Proceedings, Will Not Be Prejudiced by Having to Litigate Plaintiffs' Claims on the Merits, as the Law Strongly Favors

Defendants raise substantially the same arguments in their motions to dismiss which they raised in the prior proceeding – before the Court granted plaintiff leave to amend and defendants in fact answered plaintiff's amended complaint. There is no reason why defendants should not have to answer again, now. Their contention that now, all of a sudden, plaintiff's nearly identical allegations do not afford defendants sufficient notice to answer, rings hollow. Plaintiff's complaint more than satisfies both the notice pleading standard of F.R.Civ.P. 8(a), and the heightened pleading standard for fraud claims under F.R.Civ.P. 9(b).

It is axiomatic that the law favors both the resolution of cases on their merits, and consistent outcomes across similar cases. No case is found in which a court ultimately dismissed similar Lupron-related claims on the pleadings. In addition, defendants have already begun discovery in the present case, further obviating any claim of prejudice they might try to

make.

**G. Even if the Court Were to Find any Portion of Plaintiff's Complaint Deficient, She Should be Given Leave to Amend**

Finally, even if the Court were to grant any portion of defendants' motions to dismiss, plaintiff should be given the traditional leave to amend. This is all the more true in circumstances where defendants answered plaintiff's previous, substantially similar complaint, such that plaintiff could not reasonably have anticipated that her current complaint would be deemed deficient. The general, well-settled rule is that leave to amend should be "freely given." *See*, *e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**CONCLUSION**

For all of the foregoing reasons, plaintiff respectfully requests that the Court deny defendants' Motions to Dismiss Pursuant to F.R.Civ.P. 12(b)(5), 12(b)(6) and 9(b). In the event the Court grants any portion of defendants' motions, plaintiff respectfully requests leave to amend and/or leave to complete service of the defendants.

    Respectfully Submitted,

    ALAN S. LEVIN, M.D., J.D.
    TESFAYE W. TSADIK
    MARTIN A. DOLAN

July 24, 2015      By: *s/ Alan S. Levin*
    ALAN S. LEVIN, M.D., J.D.
    Post Office Box 4703
    Incline Village, Nevada 89450
    (775) 831-5603
    Attorneys for Plaintiff Terry Paulsen

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2015, I electronically filed the foregoing CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO RULES 12(b)(5), 12(b)(6), AND 9(b) with the Clerk of the Court using the CM/ECF system, which sends notification to all counsel of record.

| | | | |
|---|---|---|---|
| 1 | July 24, 2015 | By: | *s/ Alan S. Levin* |
| 2 | | | ALAN S. LEVIN, M.D., J.D. |
| | | | Attorney for Plaintiff |
| 3 | | | Terry Paulsen |