# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Terry Paulsen | ) | |
| | ) | 15-cv-04144 |
| Plaintiff, | ) | |
| | ) | Jeffrey T. Gilbert |
| | ) | Magistrate Judge |
| v. | ) | |
| | ) | |
| Abbott Laboratories et al | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The parties' Joint Motion to Resolve Discovery Dispute [63] is granted. The Court has reviewed the parties' positions as set forth in the Joint Motion and concludes that Defendant Abbott is not required to do anything more in responding to Plaintiff's written discovery on the limited issue as to which the District Judge has permitted discovery to go forward in this case concerning Abbott's status as a real party in interest. See Statement below for further explanation.

## STATEMENT

Plaintiff Terry Paulsen was injected with a drug called Lupron Depot to treat endometriosis in 2004. She filed suit against Defendants Abbott Laboratories, Takeda Pharmaceuticals of North America, Inc., Takeda Chemical Industries, Inc., and TAP Pharmaceutical Products, Inc. in 2011, Case No. 11-4860 (N.D. Ill.), but voluntarily dismissed that lawsuit in May 2014, without prejudice. Plaintiff refiled her lawsuit in this court in May 2015 against Abbott and the other named Defendants. A more complete procedural history of the case is contained in the District Judge's Order in this case dated January 26, 2016 ("Order"), ECF No. 52.

Defendants filed motions to dismiss Plaintiff's re-filed complaint arguing that it is untimely. Defendants argued, among other things, that the Illinois borrowing statute requires application of Georgia law to determine if Plaintiff's timely refiled her case. Under Georgia law, the refiled complaint apparently would be untimely. Order at 2. The question of whether Georgia law applies depends, in turn, on whether Abbott is a real party in interest in this case because Abbott is an Illinois resident and the parties agree that the Illinois borrowing statute does not apply if one of the real parties in interest is an Illinois resident.

*Id.* at 5. If the Illinois borrowing statute does not apply, then Plaintiff's lawsuit apparently could be determined to be timely under Illinois law.

Abbott argues it is not a real party in interest because it did not manufacture, distribute or sell Lupron when Plaintiff was injected with that drug in 2004, and it is not a successor in interest to TAP Pharmaceuticals, the company that did. The District Judge permitted Plaintiff to take limited discovery with respect to "Abbott's contention that it is not a real party in interest because it neither manufactured, distributed or sold the Lupron at issue nor is a successor in liability to a company that did so." *Id.* at 6.

Plaintiff served Abbott with 37 requests for production, 28 requests for admission, and 7 interrogatories each of which contains multiple subparts that Abbott says total 118 separate interrogatories. Joint Motion, ECF No. 63, at 3. Plaintiff says her discovery is directed at the issues about which the District Judge allowed her to take limited discovery. Abbott produced nearly 1,000 pages of documents and argues those documents contain all the information Plaintiff needs to answer the question of whether Abbott is a real party in interest in accordance with the District Judge's Order. *Id.* Plaintiff argues that Abbott is required to do more in responding to her discovery.

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure a party may obtain from another party information that is relevant to any party's claim or defense and proportional to the needs of the case. Fed.R.Civ.P. 26(b)(1).

**Plaintiff's Requests for Production of Documents**

The dispute over Abbott's responses to Plaintiff's Requests for Production of Documents apparently boils down to whether Abbott should be required to produce the joint venture agreement it entered into with Takeda in 1977. Plaintiff argues that document is relevant to whether Abbott is a real party in interest because it is the root of Abbott's joint venture relationship with Takeda. Abbott and Takeda entered into the joint venture agreement in 1977 and created TAP in 1985 by amending their 1977 joint venture agreement. TAP, in turn, distributed and sold the Lupron with which Plaintiff was injected in 2004.

Abbott has produced the 1985 amendment to the joint venture agreement by which TAP was created but it refuses to produce the original 1977 agreement. Abbott argues the original agreement is irrelevant to the issue of whether Abbott is a real party in interest because that agreement has nothing to do with TAP or with the limited issue as to which the District Judge permitted limited discovery – whether Abbott "manufactured, distributed or sold the Lupron at issue [or] is a successor in liability to a company that did so." Order, at 6.

The Court agrees with Abbott. The 1977 agreement does not have anything to do with the issues upon which the District Judge permitted Plaintiff to take discovery. The 1977 agreement predated by almost a decade the formation of TAP, the company that distributed and sold the Lupron that Plaintiff alleges caused her injury. According to

Abbott, that agreement also predated the invention of the formulation of Lupron that Plaintiff was prescribed. Joint Motion, ECF No. 63, at 13.

Plaintiff argues that she "is entitled to access the Joint Venture Agreement and be able to determine Abbot's [sic] role in connection with the manufacture, distribution, promotion and marketing of Lupron as a joint venturer with Takeda." Joint Motion, ECF No. 63, at 10. But since TAP was not created until 1985, and Plaintiff was not exposed to Lupron until 2004, it is hard to see why it is not sufficient for Plaintiff's purposes for Abbott to produce to her the 1985 amendment to the 1977 joint venture agreement pursuant to which Abbott and Takeda created TAP.

Although Plaintiff probably is correct that it would not be terribly burdensome for Abbott to produce a copy of the original 1977 joint venture agreement between it and Takeda that is not the issue. The fact that it would not be difficult for Abbott to produce the document does not mean it contains information that is relevant to the issues about which the District Judge has focused the limited discovery she decided to allow. The Court does not see how production of the 1977 joint venture agreement would advance the ball on the central and limited issue as to which the District Judge has permitted discovery. Accordingly, Abbott is not required to produce the 1977 agreement.

Plaintiff's also argues that Abbott put the original joint venture agreement into play when it responded to one of Plaintiff's requests for admission saying that Takeda manufactured Lupron in 2004 and "said manufacturing was not in conflict with the Joint Venture Agreement." *Id.* at 10. As Abbott points out, however, Plaintiff defined the "Joint Venture Agreement" to mean the original 1977 agreement and all amendments to that agreement. *Id.* at 15. Abbott says its answer to Plaintiff's request for admission refers to the 1985 amendment to the original joint venture agreement. That makes sense and Plaintiff does not provide a reason for the Court to construe Abbott's response to the request for admission any other way.

Finally, Plaintiff argues that Abbott should be required to respond to two requests for production of documents that seek all correspondence or other communication between TAP and Abbott that refers to Lupron over a 23 year period between 1985 and 2008 (Request No. 34) and all documents related to settlement payments made by Abbott for any allegations of wrong doing by TAP (Request No. 29). *Id.* at 12. Plaintiff says it is entitled to these documents to show that TAP was merely a "shell corporation" completely controlled by Abbott.

Plaintiff has pointed to nothing that gives rise to a good faith belief that TAP was a shell corporation controlled by Abbott that would justify this wide-ranging discovery. And Plaintiff's requests are way over-broad even if the subject of this discovery were relevant, sweeping within their reach documents that could not possibly be relevant to the limited issue about which the District Judge has permitted discovery to be taken. The Court cannot find that Plaintiff's requests for these documents are proportional to the needs of this case for these reasons within the meaning of Rule 26(b)(1). Accordingly, Abbott need not produce these documents.

**Interrogatory No. 1**

Plaintiff's Interrogatory No. 1 asks Abbott to provide certain information to support its denial of any of Plaintiff's 28 requests for admission. Interrogatory No. 1 itself has 4 sub-parts so Abbott objects that it really is 112 separate interrogatories and, therefore, it exceeds the limit of 25 interrogatories under the Federal Rules. Fed.R.Civ.P. 33(a).

Abbott is right but, more fundamentally, the Court does not see the point in requiring Abbott to respond to Plaintiff's Interrogatory No. 1 with respect to each of Plaintiff's 28 requests for admission as to which Abbott did not provide an unqualified admission. In responding to Plaintiff's requests for admission, Abbott complied with Rule 36(a)(4) by explaining why it could not or would not admit without qualification the substance of Plaintiff's request. No more is required at this juncture.

In certain instances, Abbott responded to Plaintiff's requests for admission by explaining why it felt the request for admission was outside the scope of the discovery allowed by the District Judge on the real party in interest issue. Requiring Abbott to do more by answering Plaintiff's Interrogatory No. 1 in these instances would be pointless.

In other instances, Abbott explained its denial by way of further answer in a way that informed Plaintiff more fully about the basis for its denial, referring to particular documents relating to the formation of TAP such as its articles of incorporation and exhibits to the 1985 amendment to the joint venture agreement. In others, it referred to publicly filed documents, such as patent applications, that contain the information Plaintiff is seeking.

Finally, it also would be pointless to require Abbott to answer an interrogatory to explain why it denied certain requests for admission that are not capable of being admitted without qualification – such as Request for Admission No. 8 ("Admit that ABBOTT would be regarded as the manufacturer of Lupron because of the JOINT VENTURE AGREEMENT with TAKEDA."). Accordingly, for all of these reasons, Abbott is not required to do more to respond to Plaintiff's Interrogatory No. 1.

It is so ordered.

Dated: June 29, 2016

Jeffrey T. Gilbert
United States Magistrate Judge