# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TERRY PAULSEN, | ) | |
| | ) | Case No. 15-cv-4144 |
| Plaintiff, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| ABBOTT LABORATORIES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Terry Paulsen ("Plaintiff") brings this action against Defendants Abbott Laboratories, Takeda Pharmaceuticals of North America, Inc., Takeda Chemical Industries, Inc., and TAP Pharmaceutical Products, Inc. ("Defendants") alleging negligence, strict products liability, breach of express and implied warranty, and fraudulent and negligent misrepresentation. Currently before the Court are Defendants' motions [96; 99] to dismiss all claims in the complaint with prejudice. For the reasons stated below, Defendants' motions [96] and [99] are granted in part and denied in part. The motion to dismiss TAP as a Defendant pursuant to Rule 12(b)(5) is granted to the extent that Plaintiff is given until May 22, 2018 to serve an amended complaint upon a proper defendant (whether that is TAP or a proper successor to TAP). If Plaintiff fails to serve a proper defendant by this date, TAP will be dismissed from the case. All claims against Defendant Takeda Inc. (and Takeda Ltd., to the extent that it is the party Plaintiff intended to name) are dismissed with prejudice. All claims against Defendant TPNA are dismissed without prejudice. Plaintiff's claims against Defendant Abbott for negligence, breach of express warranty, breach of implied warranty, fraudulent misrepresentation, and negligent misrepresentation are dismissed without prejudice. Plaintiff may proceed at this time against

Abbott on her claims for strict products liability and strict products liability—failure to warn. Plaintiff is given until April 24, 2018 to file an amended complaint consistent with this opinion, if Plaintiff believes that she can overcome the deficiencies identified below for the dismissed claims. This case is set for further status hearing on May 24, 2018 at 9:00 a.m.[1]

## I.    Background[2]

### A.    Plaintiff's Lupron Injections

Plaintiff's claims are based on the injuries she allegedly suffered after being injected with the drug depot leuprolide acetate ("Lupron"). Lupron was developed in the 1980s and approved by the FDA for the treatment of prostate cancer in 1989. [1, ¶ 10.] The FDA later approved Lupron as a treatment for endometriosis in 1990, and as a treatment for anemia associated with uterine fibroids in 1995. [*Id.*, ¶ 11.] According to Plaintiff, reports submitted to the FDA in the 1990s indicated that users of Lupron were incurring bone loss, and the FDA subsequently approved Lupron add-back therapy designed to counteract Lupron's bone-depleting effects. [*Id.*, ¶¶ 12–14.]

Plaintiff is an individual residing in Georgia. [1, ¶ 3.] Plaintiff was prescribed Lupron to treat endometriosis, and she was injected with Lupron on two occasions from February 2004 to March 2004. [*Id.*, ¶ 19.] Plaintiff subsequently received a diagnosis of severe joint arthropathy in April 2008, and she was diagnosed with osteoporosis in May 2010. [*Id.*, ¶ 20.] Plaintiff also

---

[1] The deadlines set above reflect an additional 28 days from the date of this opinion for the filing of an amended complaint and a further 28 days from that date for the service of the amended complaint on TAP or a proper successor entity.

[2] Unless otherwise stated, background facts are drawn from Plaintiff's complaint. [See 1.] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

suffers from chronic joint pain, muscle pain, and fatigue. [*Id.*] Plaintiff alleges that she suffered these personal injuries as a result of her Lupron injections. [*Id.*, ¶¶ 24, 34, 42, 49, 56, 66, 72.]

## B. The Defendants

Plaintiff names four Defendants in her complaint. Defendant Abbott Laboratories ("Abbott") is an Illinois corporation. [1, ¶ 4.] Defendant Takeda Pharmaceuticals of North America, Inc. ("TPNA"), according to Plaintiff, is a wholly-owned subsidiary of Takeda Chemical Industries, Ltd. ("Takeda Ltd."). [*Id.*, ¶ 5.] Defendant TAP Pharmaceutical Products, Inc. ("TAP"), according to Plaintiff, is a New York corporation operating as a joint venture between Takeda Ltd. and Abbott. [*Id.*, ¶ 6.] Takeda and Abbott each owned and controlled a fifty percent stake in TAP during the relevant time period. [*Id.*] Also named in the caption as a Defendant is Takeda Chemical Industries, Inc. ("Takeda Inc."). The complaint contains no allegations regarding Takeda Inc., nor does it mention that entity anywhere but the caption. However, the complaint does allege that Takeda Ltd. is the parent company of TPNA and is a fifty-percent owner of TAP. [*Id.*, ¶¶ 5–6.]

Defendants dispute several of Plaintiff's allegations regarding Defendants TPNA, Takeda Inc., and TAP. According to Defendants, TPNA is the former name of the company now known as Takeda Pharmaceuticals U.S.A. ("TPUSA"). [See 97, at 4.] Takeda Inc., according to Defendants, does not exist as a corporation. [*Id.*] To the extent that, in Plaintiff's references to Takeda Inc., Plaintiff meant to refer to Takeda Ltd., Defendants state that Takeda Ltd. is now known as Takeda Pharmaceutical Company Ltd. ("Takeda Pharmaceutical Ltd."). [*Id.*] Takeda Pharmaceutical Ltd. is a Japanese corporation headquartered in Japan. [*Id.*] TPUSA is a wholly-owned subsidiary of Takeda Pharmaceutical Ltd. [*Id.*, at 5.]

According to Defendants, TAP no longer exists as an entity. At the time Plaintiff alleges that she received her injections in 2004, TAP was responsible for the Lupron business in the United States. [97, at 3.] TAP was jointly and equally owned by Takeda America Holdings (a wholly-owned subsidiary of Takeda Ltd.) and Abbott. [*Id.*, at 3.] In April 2008, TAP concluded as a joint venture, and Abbott exchanged its fifty-percent equity interest in TAP for the assets, liabilities, and employees related to TAP's Lupron business. [*Id.*] Abbott then spun off the Lupron business into a separate publicly-traded company, AbbVie Inc. ("AbbVie"), in 2012. [100, at 2.] In July 2008, TAP was merged into TPNA and dissolved. [97, at 4.] As a Delaware corporation, TAP continued as a corporate body for three more years (until 2011) before completely ceasing to exist. [*Id.* (citing 8 Del. C. § 278).]

Turning back to Plaintiff's substantive allegations against Defendants, Plaintiff alleges that TAP was at all relevant times responsible for the research, development, testing, manufacturing and sales, distribution, and/or marketing of Lupron. [1, ¶ 8.] TAP focused its marketing efforts on securing Lupron use and sales by physicians. [*Id.*, ¶ 7.] Plaintiff also alleges that Defendants Abbott, Takeda Ltd., and TPNA direct and control TAP and are therefore responsible for its actions in conducting these activities.[3] [*Id.*, ¶¶ 7–9.] Plaintiff further alleges that Abbott, Takeda Ltd., and TAP, by agreement, jointly developed and marketed pharmaceutical products for the American and Canadian markets. [*Id.*, ¶ 7.] Plaintiff alleges that Defendants knew or should have known of long-term health problems associated with the use of Lupron but failed to adequately inform Plaintiff or Plaintiff's physician of these risks in

---

[3] Plaintiff alleges that TAP is directed and controlled by Abbott and Takeda Ltd., but she also alleges that TPNA is the company responsible for TAP's actions. [See 1, ¶¶ 7–8.] Beyond alleging that TPNA is a subsidiary of Takeda Ltd., the complaint contains no additional allegations connecting TPNA to TAP.

Lupron's prescribing information, promotional documents, and applications for FDA approval.[4] [*Id.*, ¶¶ 15–18.]

### C. Procedural History

Although the instant action was recently transferred to this Court's docket in October 2017, it has an extensive procedural history. The Court will set out the factual and procedural background of this longstanding litigation as it pertains to the current action. See *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (explaining that a court may take judicial notice of matters in public record, including court documents, in deciding a motion to dismiss without converting it to a motion for summary judgment).

Plaintiff (along with other plaintiffs no longer involved in the case) originally filed suit against Abbott, TPNA, Takeda Inc., and TAP in April 2010 in the Eastern District of New York. The case was then transferred to the Southern District of New York before ultimately being transferred to the Northern District of Illinois in July 2011. [See *Cardenas v. Abbott Laboratories*, 11-cv-4860 (N.D. Ill.) (the "First Lawsuit"), (Transfer Order), 30.]. In the order transferring the case to the Northern District of Illinois, the Southern District of New York dismissed Defendant Takeda Ltd. (named in the complaint as Takeda Inc.) as a party because it was not served with process and Plaintiffs moved that it be removed as a party defendant. [*Id.*, at 1 n.1.]

The case proceeded in the Northern District of Illinois before Judge Gottschall. Judge Gottschall granted the Defendants' motion to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and granted Plaintiffs leave to file an amended

---

[4] While not mentioned in Plaintiff's complaint, a previous decision issued in this case discussed at length the fact that Abbott also entered into a Service Agreement with TAP whereby Abbott agreed to receive TAP goods (including Lupron) at its central warehouse, transport TAP goods to Abbott's distribution centers, warehouse TAP goods, take and fill customer orders for TAP goods, and arrange for the shipment of ordered goods to TAP customers. [See 95, at 2.]

complaint. [First Lawsuit (Memorandum Opinion & Order), 42]. Plaintiffs filed an amended complaint in October 2011, [see First Lawsuit, (Second Amended Complaint), 45], and the case proceeded to discovery.

In August 2013, Plaintiff's then-counsel moved to withdraw from the case. [First Lawsuit, (Motion to Withdraw), 106.] Judge Gottschall granted the motion, [see *id.*, (Order), 107], and ordered Plaintiff to file an appearance within 30 days of the court's order or the action would be dismissed for want of prosecution. Plaintiff did not file an appearance, and the case was dismissed on October 1, 2013. [See *id.*, (Order), 115.] Plaintiff's mother then sent the court a letter asking that Plaintiff's case be reinstated, [see *id.*, (Letter), 119], and Plaintiff moved to vacate the dismissal on October 30, 2013. [See *id.*, (Motion to Vacate Dismissal for Want of Prosecution), 123]. The court granted the motion over Defendants' objection, and the case was reinstated. [*Id.*, (Order), 142.] Plaintiff then voluntarily dismissed the case on May 28, 2014. [*Id.*, (Notice of Voluntary Dismissal), 143.] On April 24, 2015, Plaintiff, through newly-acquired counsel, moved to reopen the case. [*Id.*, (Motion to Reopen Case), 146.] The court denied the motion *sua sponte* on April 30, 2015. [*Id.*, (Order), 147.]

Plaintiff then filed a new complaint against Abbott, TPNA, Takeda Inc., and TAP in the instant action on May 11, 2015. [See 1.] This complaint brings seven causes of action against all Defendants: (1) negligence; (2) strict products liability; (3) strict products liability—failure to warn; (4) breach of express warranty; (5) breach of implied warranty; (6) fraudulent misrepresentation; and (7) negligent misrepresentation.[5] [See 1, ¶¶ 22–73.]

---

[5] These are the same causes of action brought against Defendants in the previously filed action. [See First Lawsuit, (Second Amended Complaint), 45.]

Plaintiff's complaint states that it is re-filed pursuant to the Illinois savings statute, 735 ILCS 5/13-217.[6] [*Id.*, ¶ 2.] All Defendants moved to dismiss the complaint in July 2015. [See 25; 28.] Judge Gottschall denied the motions without prejudice pending resolution of the issue of the timeliness of Plaintiff's re-filed suit. [See 52.] Specifically, the parties disputed whether the Illinois savings statute actually applies to the action, or whether the Georgia limitations period would apply instead by operation of the Illinois borrowing statute.[7] The answer to this question is dispositive, because the Georgia limitations period provides a six-month re-filing period for a voluntarily dismissed complaint as opposed to Illinois's one-year re-filing period. See Ga. Code Ann. § 9-2-61(a). Plaintiff's re-filed complaint was filed more than six months, but less than one year, after the voluntary dismissal of the First Lawsuit.

The answer to this dispositive threshold question turns on whether Defendant Abbott, the only current Illinois citizen in the case, is a real party in interest to this action (in other words, whether it is a potentially liable defendant)—if it is not, then the Georgia re-filing period would apply via the Illinois borrowing statute, and this action would be untimely. Therefore, Judge Gottschall allowed limited discovery to proceed on Abbott's contention that it is not a real party in interest and denied all pending motions without prejudice pending resolution of this issue. [52, at 5.]

---

[6] The Illinois savings statute provides that a plaintiff who voluntarily dismisses her action may commence a new action within one year or within the remaining period of limitation, whichever period is greater. 735 ILCS 5/13-217.

[7] The Illinois borrowing statute provides that "[w]hen a cause of action has arisen in a state or territory out of this State * * * and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State." 735 ILCS 5/13-210. Application of this statute in this action results in the application of Georgia law because Plaintiff is a Georgia resident and her injury occurred in that state. [See 95, at 3.]

After this limited discovery period concluded, Abbott moved for summary judgment on the threshold issue of whether it is a real party in interest to this lawsuit. [See 70]. Judge Gottschall denied the motion. [See 95.] Specifically, Judge Gottschall found that a genuine issue of material fact exists as to whether Abbott is a real party in interest to the action. [See *id.*, at 12.] Abbott had argued that it was not a real party in interest because, at the time Plaintiff received her Lupron injections in 2004, Lupron was manufactured by Takeda Ltd. in Japan and distributed in the United States by TAP: according to Abbott, at this time it was merely a peripheral party to the Lupron chain of distribution and thus not subject to liability. [*Id.*, at 6.] Judge Gottschall found that Abbott "was responsible for every aspect of the distribution chain" and, as such, there was a genuine issue of material fact as to whether Abbott's role in the distribution chain was sufficient to create liability. [*Id.*, at 12.] Therefore, Judge Gottschall denied summary judgment and stated that the parties were free to resubmit any dispositive motions that were previously denied without prejudice. [*Id.*]

Defendants then re-submitted their previously-filed motions to dismiss in April 2017.[8] [See 96; 99.] Defendants first argue that Takeda Inc. and TAP were not properly served and therefore all claims should be dismissed against them with prejudice pursuant to Rule 12(b)(5). [96, at 1.] Defendants also move to dismiss the complaint on several grounds pursuant to Rule 12(b)(6). First, Defendants argue that all of Plaintiff's causes of action against Takeda Inc., and all of her breach of express and implied warranty claims, are time-barred. [*Id.*] Second, Defendants argue that the complaint fails to state any plausible claim for any causes of action against Defendants under Rule 8, and fails to plead the fraudulent misrepresentation cause of action with the specificity required by Rule 9(b). [*Id.* at 1–2; 99, at 1.] Finally, Defendants

---

[8] While Abbott has filed a separate motion to dismiss from TPNA, Takeda Inc., and TAP, each motion to dismiss is joined by the other and the Court will therefore discuss them jointly. See [96, at 2]; [99, at 2–3].

argue that Plaintiff fails to allege any wrongdoing by any specific Defendant and the complaint should be dismissed on that basis as well. [96, at 1; 99, at 1.] Defendants further argue that all of Plaintiff's claims should be dismissed with prejudice. [96, at 1; 99, at 2.] In October 2017, the action was transferred to this Court for all further proceedings, including disposition of these motions. [See 108.]

## II.     Rule 12(b)(5) Motion to Dismiss

### A.     Legal Standard

Once a plaintiff files a lawsuit in federal court, the plaintiff must ensure that each defendant receives a summons and a copy of the complaint against it. Fed. R. Civ. P. 4(b), (c)(1). Unless the plaintiff can demonstrate good cause for being unable to do so, she must accomplish this service of process within 90 days of filing to avoid possible dismissal of the suit. Fed. R. Civ. P. 4(m).[9] These service requirements serve several purposes: they "provide notice to parties, encourage parties and their counsel to diligently pursue their cases, and trigger a district court's ability to exercise jurisdiction over a defendant." *Cardenas v. City of Chi.*, 646 F.3d 1001, 1004–05 (7th Cir. 2011) (citing *Henderson v. United States*, 517 U.S. 654, 672 (1996)) (other citations omitted). Generally, "a district court may not exercise personal jurisdiction over a defendant unless the defendant has been properly served with process, and the service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint." *United States v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008).

---

[9] At the time this action was initially filed and service was purportedly accomplished, the Federal Rules of Civil Procedure provided 120 days to serve process on defendants. See Fed. R. Civ. P. 4(m) (2014). Because Defendants argue that they are completely incapable of being served within either 90 days or 120 days—both of which time periods have passed—the question of which version of the rules applies is ultimately irrelevant. Therefore, the Court will cite to the current version of Rule 4(m) unless otherwise noted.

"A defendant may enforce the service of process requirements through a pretrial motion to dismiss," at which point the plaintiff "bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas*, 646 F.3d at 1004–05. (citing Fed. R. Civ. P. 12(b)(5)) (other citation omitted). If the Court determines that the plaintiff has not met that burden and lacks good cause for not perfecting service, the Court must either dismiss the suit or specify a time within which the plaintiff must serve the defendant. Fed. R. Civ. P. 4(m); *United States v. McLaughlin*, 470 F.3d 698, 700 (7th Cir. 2006). The Court's decision on a Rule 12(b)(5) motion is "inherently discretionary." *Cardenas*, 646 F.3d at 1005 (citing *Ligas*, 549 F.3d at 501). In making its determinations on a Rule 12(b)(5) motion, a court may consider affidavits and other documentary evidence. See *Zausa v. Pellin*, 2017 WL 2311232, at *4 (N.D. Ill. May 26, 2017); *Dumas v. Decker*, 2012 WL 1755674, at *2 (N.D. Ill. May 16, 2012).

### B.     Analysis

#### 1.     Defendant TAP

Defendants argue that TAP was not properly served and therefore the complaint should be dismissed against it as a Defendant. Plaintiff's proof of service indicates that TAP was served by delivering a copy of the summons and complaint to CT Corporation System in Chicago, Illinois. [See 18.] But, according to Defendants, TAP no longer exists as a corporation and therefore could not have appointed CT Corporation System as its registered agent authorized to accept service. [See 97, at 9; 100, at 2.] TAP, as a joint venture between Abbott and Takeda Ltd. ended in April 2008, and Abbott at that time exchanged its fifty-percent interest in TAP for the assets, liabilities, and employees related to TAP's Lupron business. [100, at 2.] In July 2008, TAP merged into TPNA and dissolved as a corporation. [97, at 4.] Also, according to

Defendants, in December 2012 Abbott split into two separate publicly-traded companies. At that time, all of its Lupron-related business went to AbbVie. [100, at 2.] Thus, AbbVie currently holds all of TAP's liabilities related to Lupron. [107, at 5.] TAP, meanwhile, as a Delaware corporation, continued its existence as a body corporate for three years beyond the end of the joint venture under Delaware law, before completing ceasing to exist in 2011. [97, at 4.]

Plaintiff does not contest the assertion that TAP no longer exists. [See 104, at 4.] Instead, Plaintiff argues that the process through which TAP dissolved—by merging into TPNA—means that TPNA inherited TAP's liabilities. Therefore, Plaintiff argues, TPNA "is the logical entity to serve on TAP's behalf," and, since TPNA has not contested service, she has properly served the right party to effectively serve TAP. [*Id.*, at 5.]

The Court concludes that Plaintiff has not met her burden to demonstrate that she effectively served TAP with process in this case. As an initial matter, the Court rejects Plaintiff's contention that Defendants have waived any arguments related to proper service by filing dispositive motions and engaging in discovery. "[T]he federal rules permit defendants to simultaneously seek relief and raise a jurisdictional defense without waiving that defense." *Ligas*, 549 F.3d at 502; see also Fed. R. Civ. P. 12(b) (Rule 12(b) defenses may be asserted by motion before pleading if a responsive pleading is allowed); Fed. R. Civ. P. 12(g)(1) ("A motion under this rule may be joined with any other motion allowed by this rule."). Defendants raised the issue of insufficient service of process by motion from the outset of this case in 2015. [See 28.] This motion was denied without prejudice to give the parties, specifically Plaintiff and Abbott (not TAP or any of the other Takeda-related Defendants), the opportunity to conduct discovery on a limited threshold issue. Once Judge Gottschall denied summary judgment on that threshold issue, she granted the parties leave to resubmit any dispositive motions that were

previously denied without prejudice. [95, at 12.] Defendants once again raised the issue of TAP's service by motion. [See 96.] Thus, Defendants have not waived the issue of service through the filing of their dispositive motions. Furthermore, even if TAP had participated in the court-ordered discovery in this case (which appears to have only involved Abbott) the Seventh Circuit has held that "a defendant does not waive a jurisdictional argument when it properly raises the defense but participates in litigation at the district court's direction." *Ligas*, 549 F.3d at 503 (citing *IDS Life Ins. Co. v. SunAm. Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998)). Because Judge Gottschall specifically directed the parties to proceed with limited discovery on a threshold issue, [see 52; 53], Defendants have not waived their jurisdictional arguments by participating in this process.

Turning to the merits of TAP's position, the parties agree that TAP no longer exists as an entity. [See 97, at 4; 104, at 4–5.] Defendants have indicated that TAP dissolved in 2008 and support this fact through attaching Takeda Pharmaceutical Ltd.'s 2008 Annual Report. [See 97, Ex. A (Takeda Pharmaceutical Ltd. 2008 Annual Report), at 10.] Plaintiff does not dispute that this 2008 date is accurate. Therefore, the Court will take judicial notice of this document for purposes of confirming that TAP dissolved in 2008. See *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (a court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute" and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned") (quoting Fed. R. Evid. 201(b)).

The parties also agree that TAP, when it did exist, was incorporated in Delaware. [97, at 4; 104, at 5].[10] Delaware law thus controls issues surrounding TAP's dissolution and how it

---

[10] In her complaint, Plaintiff states that TAP is a New York corporation. [See 1, at 1.] However, in her opposition to Defendants' motions to dismiss, Plaintiff states that TAP was chartered under the laws of

affects the service issues in this case. See *United States v. P.F. Collier & Son Corp.*, 208 F.2d 936, 937 (7th Cir. 1953) ("[A] dissolved corporation may thereafter be proceeded against either criminally or civilly only if authorized by the laws of the state of its incorporation."). In Delaware, dissolved corporations "shall nevertheless be continued, for the term of 3 years from such * * * dissolution * * * [as] bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them." 8 Del. C. § 278; see also *In re Krafft-Murphy Co., Inc.*, 82 A.3d 696, 705 (Del. 2013) ("Nothing in § 278 operates as a statute of limitations that would bar claims or extinguish a dissolved corporation's liability to third parties. It is the case—and our courts have frequently held—that as a *body corporate* a dissolved corporation ceases to exist and is not amenable to suit after the expiration of § 278's three year period."); *cf. Centagon, Inc. v. Bd. of Directors of 1212 Lake Shore Drive Condominium Ass'n*, 2001 WL 1491523, at *4–5 (N.D. Ill. Nov. 21, 2001) (holding that plaintiff, a dissolved Delaware corporation, had no standing to bring a lawsuit because "§ 278 is explicit in its mandate limiting the rights and activities of dissolved corporations"). Therefore, TAP as a body corporate ceased to exist in 2011, three years after it dissolved.

Plaintiff's various arguments in opposition to Defendants' 12(b)(5) motion focus on tracing what happened to TAP's Lupron-related liabilities once the corporation dissolved and whether these liabilities were inherited by TPNA or by Abbott.[11] These arguments focus on the

---

Delaware. [104, at 5.] According to the Delaware Secretary of State website, TAP Pharmaceuticals, Inc. was incorporated in Delaware. See State of Delaware, Department of State: Division of Corporations, https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx (search for "TAP Pharmaceuticals"), (last accessed March 26, 2018). The Court may take judicial notice of this public record confirming that TAP was incorporated in Delaware. See *Lengerich v. Columbia Coll.*, 633 F. Supp. 2d 599, 607 n.2 (N.D. Ill. 2009) (taking judicial notice of a corporation's filing on the Illinois Secretary of State website).

[11] In her opposition brief, Plaintiff appears to both argue that "TPNA inherited TAP's liability," [104, at 5], and acknowledge that "Abbott acquired, by express agreement, TAP's and all of its Lupron-related liabilities," [*id.*, at 4].

ultimate liability of TPNA, Abbott, or even AbbVie (the entity that Defendants definitively claim holds all of TAP's Lupron-related liabilities) for Plaintiff's claims stemming from TAP's activities in 2004. But Plaintiff's arguments mostly do not address the issue on which Defendants' 12(b)(5) motion is focused: whether Plaintiff actually effectuated service on TAP in 2015.

Plaintiff does maintain that she effectively served TAP, arguing that Plaintiff's proper service on TPNA gives effect to service on TAP, because TAP dissolved into TPNA. [104, at 4.] But Plaintiff cannot effectively serve one corporation by serving a completely different corporation. See *Hurtado v. 7-Eleven, Inc.*, 508 F. App'x 564, 565 (7th Cir. 2013) (plaintiff did not adequately serve defendant corporation, despite plaintiff's contention that he did so, when plaintiff attempted to serve an independent franchisee of the defendant); see also *Adams v. Allied Signal Gen. Aviation Avionics*, 74 F.3d 882, 885 (8th Cir. 1996) (service of process on parent corporation was insufficient where plaintiffs had served process on officer of a subsidiary of that parent); *Mock v. Tharaldson Co.*, 2000 WL 34031790, at *2 (N.D. Iowa Jan. 26, 2000) (service of process was insufficient where "[t]he defendant has shown that no legal entity was served with the complaint" before the deadline for service in Rule 4(m), and plaintiff merely argued that she had reasonably tried to serve a completely different corporation that did not exist). And, while Plaintiff argues that serving TPNA suffices for serving TAP, "nothing in the Federal Rules of Civil Procedure allows a judge to excuse service altogether." *McMasters v. United States*, 260 F.3d 814, 817 (7th Cir. 2001).

Moreover, Plaintiff has not demonstrated that any good cause exists for her failure to properly serve TAP within the time period provided by Rule 4(m) (which was 120 days at the time this suit was filed). The docket in the First Lawsuit demonstrates that the fact of TAP's

dissolution was available to Plaintiff in 2011. See [First Lawsuit, (Transfer Order), 30, at 4] (noting that TAP "no longer exists as it has merged out of existence"). Moreover, the docket in this case demonstrates that Defendants first identified their Rule 12(b)(5) argument regarding TAP on July 6, 2015, [see 28], which was 56 days after the complaint was filed and thus well within the Rule 4(m) deadline (and well within the time for Plaintiff to either properly serve TAP or move the court for an extension of time in which to do so). Delaware law does provide ways to serve a dissolved Delaware corporation. See *In re Krafft-Murphy Co., Inc.*, 2011 WL 5420808, at *3–4 (Del. Ch. Nov. 9, 2011) (rejecting argument that dissolved corporation is completely incapable of service after expiration of three-year statutory winding up period, but acknowledging that service on the dissolved corporation's attorney was insufficient and authorizing service by publication). But that does not mean that TAP, after it dissolved, could be served by serving a former registered agent or by serving the corporation into which it merged. See *Mathias v. Angola Neck Park Prop. Owners Assoc., Inc.*, 2014 WL 6478844, at *1–2 (Del. Ch. Nov. 20, 2014) (recommending that service of process on corporation be quashed where three-year winding up period of § 278 had expired by the time plaintiffs filed the complaint, but noting that a receiver may be appointed under 8 Del. C. § 279 to re-empower the corporation to defend its interests); see also *Mason v. TAP Pharm. Prod., Inc.*, 2015 WL 4898227, at *1 (N.D. Ohio Aug. 17, 2015) (dismissing claims against TAP where plaintiffs did not dispute that TAP could not be served). Plaintiff had options for service of TAP within the Rule 4(m) time period, but she did not take advantage of them and has not demonstrated good cause for her failure to do so.

In these circumstances, the Court has discretion to either dismiss the complaint against TAP or set a time by which Plaintiff must serve TAP. See *Cardenas*, 646 F.3d at 1006; *Ligas*,

549 F.3d at 501. Rule 4(m) provides no specific criteria that the Court must consider in exercising its discretion. The Seventh Circuit has identified several factors that a district court may consider in its analysis, though, including whether the statute of limitations had expired, which would prevent refiling of the action; whether the defendant had evaded service; whether the defendant would be prejudiced by an extension; whether the defendant had actual notice of the lawsuit; whether the defendant was eventually served; whether plaintiff requested an extension from the court due to difficulties in perfecting service; and whether plaintiff diligently pursued service during the allotted period. See *Cardenas*, at 646 F.3d at 1006–07. The judge's decision on these factors, however they balance out, is inherently discretionary. See *id.*, at 1007 (even if the balance of the parties' hardships favors an extension, the Court retains "its discretion to hold the Plaintiff[] accountable for [her] actions—or, more accurately, inaction—by dismissing the case") (citing *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002)); see also *McLaughlin*, 470 F.3d at 701 (noting "the wisdom of Rule 4(m) in allowing a judge to excuse a delay in service even if the plaintiff has no excuse at all").

Here, Plaintiff's complaint was filed nearly three years ago and, despite issues with TAP's service being brought to her attention soon after the complaint was filed, Plaintiff chose to stand on the service that she initially attempted and did not request an extension of time in which to serve TAP. There is no indication that TAP was ever properly served as a separate entity, nor is there any indication that TAP attempted to evade service by hiding the fact of its dissolution from Plaintiff. All of these factors would favor immediate dismissal of TAP as a defendant, rather than granting Plaintiff additional time in which to serve TAP.

There is also the issue of the statute of limitations in this case. This case began in 2010 and has already been re-filed: if TAP is dismissed as a separate defendant, Plaintiff would most

likely be time-barred from re-filing a suit against it. That counsels in favor of allowing Plaintiff additional time in which to serve TAP. Of course, it is unclear whether TAP should be served at all. Plaintiff has variously argued that TPNA and Abbott—both properly-served Defendants—currently hold TAP's Lupron liabilities, and Abbott argues that AbbVie holds these liabilities and would thus be the proper party to sue. But AbbVie itself has never been served, and any suit against AbbVie may not be viable because of the passage of time, meaning any extension of time granted to Plaintiff to serve the correct entity could ultimately be futile.

The Court will not resolve the issue of which entity actually holds TAP's Lupron-related liability here, nor will it resolve any of the other complicated timing issues affecting this case, few of which have been briefed in the motions that are specifically before the Court. The Court will allow Plaintiff additional time to serve whatever entity it believes now owns the Lupron-related liabilities of TAP. Although several years have passed since service was last attempted, and an even longer period of time has passed during which the dissolution of TAP was within Plaintiff's knowledge, the Court believes that the provision of this extra time will not prejudice Defendants and will promote the disposition of Plaintiff's claims on their merits. While the timing issues will still be present in this action and affect whether Plaintiff ultimately will be able to pursue her claims against whichever entity holds TAP's liabilities, the Court will afford this opportunity to Plaintiff if she has a reasonable basis for believing that she can successfully bring the correct entity into this action to pursue her Lupron-related claims against TAP.

Therefore, Defendants' motion to dismiss TAP as a Defendant pursuant to Rule 12(b)(5) is granted to the extent that Plaintiff shall have until May 22, 2018 to serve an amended complaint upon a proper defendant (whether that is TAP, TPNA, Abbott, AbbVie, or some other entity). If Plaintiff fails to serve a proper defendant by this date, TAP will be dismissed from the

case. This order is without prejudice to any defenses, statute of limitations-based or otherwise, that any previously-unserved or previously-served defendant may opt to bring in response to such an amended complaint.

## 2. Defendant Takeda Inc.

Defendants similarly argue that Takeda Inc. should be dismissed because it was not properly served. To the extent that Plaintiff intended to name and serve Takeda Ltd. (now known as Takeda Pharmaceuticals Ltd.), Defendants argue that this is a Japanese corporation with no physical presence in the United States and therefore this entity also was not properly served. [97, at 8–9.] Plaintiff argues that Takeda Inc. is an "entity susceptible of suit" and any error she made in the name of the party is at worst a scrivener's error, and therefore her service of Takeda Inc. is acceptable. [104, at 4–5.]

The Court need not reach the issue of whether service was properly effected on Takeda Inc.—or Takeda Ltd., the other entity referenced in the complaint—because any claims against either entity are indisputably time-barred. On July 9, 2011, plaintiff filed a motion requesting that Takeda Ltd., named as Takeda Inc., be removed as a defendant in the First Lawsuit. [First Lawsuit, (Transfer Order), 30, at 1 n.1.] The court, based on this motion and based on the fact that this defendant was never served with process, dismissed Takeda Inc. / Takeda Ltd. as a defendant. [*Id.*]

The Illinois savings statute provides that an action that is voluntarily dismissed by a plaintiff may be re-filed within one year. 735 ILCS 5/13-217.[12] Takeda Inc. / Takeda Ltd. was voluntarily dismissed from the action on July 9, 2011, and therefore the action against it would have had to be re-filed by July 9, 2012 in order to be timely. This current action was not initiated

---

[12] As discussed, the parties have disputed whether the Illinois savings statute or the Georgia savings statute applies to this action, but not even the more-favorable Illinois law will save Plaintiff's claims against Takeda Inc.

until May 11, 2015. [See 1.] Therefore, the Illinois savings statute cannot save the suit with respect to Takeda Inc. or Takeda Ltd., and all claims against either named entity are time-barred. See *Palka v. City of Chi.*, 662 F.3d 428, 433–34 (7th Cir. 2011) (where plaintiff had voluntarily dismissed defendant from action, and the one-year statute of limitations from the Illinois savings statute for re-filing a voluntarily dismissed claim had passed, "any attempt to refile the * * * claim against [the defendant] would be time-barred"); *Lakin v. Skaletsky*, 327 F. App'x 636, 637–38 (7th Cir. 2009) (affirming dismissal of re-filed complaint as time-barred, where complaint was not re-filed until after the one-year limitation period in the Illinois savings statute had passed). And, because this is already a re-filed case, Plaintiff would not be able to file any new action against Takeda Inc. or Takeda Ltd. See *Flesner v. Youngs Dev. Co.*, 582 N.E.2d 720, 721 (Ill. 1991) ("[S]ection 13-217 expressly permits one, and only one, refiling of a claim."). Therefore, all claims against Takeda Inc. (and Takeda Ltd. to the extent that this is the party that Plaintiff meant to reference) are dismissed with prejudice.

## III.     Rule 12(b)(6) Motion to Dismiss

### A.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at

555).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  The Court reads and assesses the plausibility of the complaint as a whole.  See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

## B.     Analysis

The remaining Defendants in the case—TPNA and Abbott—move to dismiss each cause of action in the complaint for failure to plausibly state a claim against them under the relevant pleading standards.  The Court will address the sufficiency of the complaint as to each of these remaining Defendants separately.

### 1.     Defendant TPNA

The Court will address the claims against TPNA first.  TPNA must be dismissed as a Defendant because Plaintiff's complaint fails to state any claim against it under the relevant pleading standard.

In her complaint, Plaintiff alleges that TPNA is a wholly-owned subsidiary of Takeda Ltd. and focuses on clinical development activities in a variety of areas, including the development of Lupron.  [1, ¶ 5.]  Plaintiff also alleges that Takeda Ltd., TPNA's parent company, owns a fifty-percent stake in TAP.  [*Id.*, ¶ 6.]  According to Plaintiff, Takeda Ltd., by agreement with Abbott and TAP, develops and markets pharmaceutical products (including

Lupron), and TAP is responsible for the research, development, testing, manufacturing, distribution, and marketing of Lupron. [*Id.*, ¶ 8.] Plaintiff alleges that TPNA is "responsible" for TAP's actions, and that any references in the complaint to TAP or Defendants includes TPNA, [see *id.*, ¶¶ 8–9], but there is nothing in the complaint that connects TPNA to TAP and its alleged responsibility for Lupron-related activities beyond their shared parent company. See *United States v. Bestfoods*, 524 U.S. 51, 61–63 (1998) (unless the corporate form is misused for wrongful purposes, "the mere fact that there exists a parent-subsidiary relationship between two corporations" does not "make the one liable for the torts of its affiliate") (internal quotation marks and citation omitted); *IDS Life Ins.*, 136 F.3d at 540 ("Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil * * * the parent is not liable for those torts."). Without this link, Plaintiff's inclusion of TPNA in its references to "TAP" or "Defendants" is not plausible and is therefore insufficient to satisfy Rule 8's pleading standard. See *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) ("When ruling on a motion to dismiss, the court must review the complaint to determine whether it contains enough fact to raise a reasonable expectation that discovery will reveal evidence to support liability for the wrongdoing alleged.") (internal quotation marks and citation omitted); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("[C]ourts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim."). Plaintiff simply has not alleged that TPNA was at all involved with TAP's activities relating to Lupron, and without such allegations her claims against TPNA are not plausible. See *Twombly,* 550 U.S. at 558.

Therefore, all of Plaintiff's claims against Defendant TPNA in her complaint are dismissed. This dismissal is without prejudice.

### 2. Defendant Abbott

The Court will now turn to the substance of the claims against Defendant Abbott. Abbott moves to dismiss every cause of action in Plaintiff's complaint for failure to state a claim.

### a. *Choice of Law Principles*

Before assessing the substance of each claim under the relevant pleading standard, the Court must address which state's substantive law applies to each of Plaintiff's claims.[13] Federal courts sitting in diversity must apply the choice-of-law rules of the forum state in which they sit. See, *e.g.*, *Wildey v. Springs*, 47 F.3d 1475, 1480 (7th Cir. 1995); see also *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941). Thus, this Court will apply Illinois choice-of-law principles.

Recognizing the wisdom of the Seventh Circuit's advice that "'before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states,'" the Illinois Supreme Court has stressed that "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007) (quoting *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992)). In this case, the parties disagree on the law applicable to all of Plaintiff's claims. Defendants contend

---

[13] While Judge Gottschall previously denied summary judgment on the issue of the proper law governing the statute of limitations in this case, [see 95], that is a procedural question governed by Illinois law (either the Illinois savings statute or the Illinois borrowing statute) and thus is separate from the question of what state law governs substantive issues. See *Cox v. Kaufman*, 571 N.E.2d 1011, 1015 (Ill. App. Ct. 1991) ("Under traditional choice of law principles, the law of the forum state controls procedural questions, and the law of the state in which the cause of action accrued governs substantive issues."). Therefore, to clarify, the Court is not revisiting in this opinion Judge Gottschall's analysis regarding the applicability of Illinois or Georgia law to the timeliness of this re-filed lawsuit.

that Georgia law applies to each claim because Georgia is the state where Plaintiff lives and suffered her alleged injuries. [See 100, at 10.] Plaintiff disputes this, and instead argues that Illinois law applies to all of her claims because, using the relevant choice-of-law analysis, Illinois has a more significant relationship to this action. [104, at 12–13.] The parties do agree that the answer to this question is outcome-determinative at least on Plaintiff's strict products liability causes of action based on differences between Illinois and Georgia law.[14] Therefore, a choice-of-law analysis is necessary.

In tort cases, Illinois follows the "most significant relationship test" of the Restatement (Second) of Conflict of Laws ("Second Restatement") to resolve a choice-of-law issue. See *Suzik v. Sea-Land Corp.*, 89 F.3d 345, 348 (7th Cir. 1996); see also *Townsend*, 879 N.E.2d at 901. The Second Restatement "contemplates a two-step process in which the court (1) chooses a presumptively applicable law under the appropriate jurisdiction-selecting rule, and (2) tests this choice against the principles of § 6 in light of relevant contacts identified by general provisions like § 145 (torts)." *Townsend*, 879 N.E.2d at 903 (citation omitted). Based on this two-step process, in Illinois there is a strong presumption that the law of the place of injury applies in a personal injury case, and this presumption is only overcome by "showing a *more* or *greater* significant relationship to another state." *Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 747 (N.D. Ill. 2010) (quoting *Townsend*, 879 N.E.2d at 903); see also *Robinson v. McNeil Consumer*

---

[14] In Georgia, a strict liability claim can only be maintained against the manufacturer of a product. *Am. Coach Lines of Orlando, Inc. v. N. Am. Bus Indus., Inc.*, 2011 WL 653524, at *28 (M.D. Fla. Feb. 14, 2011) (applying Georgia law and citing *Farmex, Inc. v. Wainwright*, 501 S.E.2d 802, 804 (Ga. 1998), and *Ellis v. Rich's, Inc.*, 212 S.E.2d 373, 376 (Ga. 1975)). By contrast, in Illinois, "all persons in the distributive chain are liable for injuries resulting from a defective product, including suppliers, distributors, wholesalers and retailers." *Hammond v. N. Am. Asbestos Corp.*, 454 N.E.2d 210, 216 (Ill. 1983); see also *Phillips v. Howmedica Osteonics Corp.*, 2007 WL 4441228, at *4 (S.D. Ill. Dec. 17, 2007); *Prompt Air, Inc. v. Firewall Forward, Inc.*, 707 N.E.2d 235, 238 (Ill. App. Ct. 1999) (The doctrine of strict products liability "has been expanded to include all persons in the distributive chain of a defective product") (internal quotation marks and citation omitted).

*Healthcare*, 615 F.3d 861, 866–67 (7th Cir. 2010) (the most significant relationship test "points presumptively to the law of the jurisdiction in which the tort occurred" because "a tort can't be said to occur until an injury is produced"); *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 (7th Cir. 1999) (collecting cases and stating, "in the absence of unusual circumstances, the highest scorer on the 'most significant relationship' test is the place where the tort occurred"); Restatement (Second) of Conflict of Laws § 146. The principles from §§ 6 and 145 of the Second Restatement guide the analysis of whether another state has a greater relationship to the cause of action. *Townsend*, 879 N.E.2d at 903; *Smith*, 753 F. Supp. 2d at 747.

Under § 145(2) of the Second Restatement, courts assessing a choice of law issue should consider, in addition to the place where the injury occurred, the place where the conduct causing the injury occurred; the domiciles of the parties; and the place where the relationship, if any, between the parties is centered. See *Townsend*, 879 N.E.2d at 901 (quoting Restatement (Second) of Conflict of Laws § 145(2)). "A court does not simply 'count contacts' but rather considers them in light of the general principles identified in section 6 of the [Second] Restatement." *Smith*, 753 F. Supp. 2d at 747 (quoting *Townsend*, 879 N.E.2d at 906). In a personal injury action, Illinois focuses specifically on the following principles outlined in § 6 of the Second Restatement: the relevant policies of the forum; the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; and the basic policies underlying the particular field of law. *Townsend*, 879 N.E.2d at 906–07.

Applying these principles to the instant case, the Court concludes that Georgia substantive law applies to Plaintiff's causes of action. The place where Plaintiff's injury occurred is Georgia, and therefore there is a strong presumption that Georgia substantive law

applies to Plaintiff's personal injury claims. Considering the other relevant contacts identified by § 145 does not identify a stronger relationship with Illinois. The state where the conduct that caused the injury occurred is not clear. Plaintiff argues that all relevant conduct occurred in Illinois because this is where Defendants developed, tested, and marketed Lupron, while Defendants argue that relevant conduct took place in Illinois, but also other places, including Georgia (where Plaintiff was injected with Lupron) and Japan (where Defendants contend that Lupron was actually manufactured). The domicile factor also does not point strongly to any one state, as Plaintiff is a Georgia resident, and Abbott is an Illinois resident.[15] The parties' relationship is centered in Georgia, as this is where Plaintiff was injected with Lupron.

Considering these factors, Illinois does have some relationship to the action, but nothing about Abbott's or any other Defendant's presence in the state gives Illinois a more significant relationship to the case so as to overcome the presumption that Georgia, the place where Plaintiff suffered her injury, is the state with the most significant relationship to the action. See *Townsend*, 879 N.E.2d at 907; see also *Robinson*, 615 F.3d at 865–66 (applying Illinois choice-of-law principles and concluding, where plaintiff ingested drug in Virginia and was administered initial medical treatment in Virginia, Virginia law governed her products liability suit); *Gray v. Abbott Laboratories, Inc.*, 2011 WL 3022274, at *3 (N.D. Ill. July 22, 2011) (applying Georgia substantive law in products liability diversity action because the relevant product was purchased, and the alleged injury occurred, in Georgia).

Consideration of the Second Restatement's § 6 policy principles similarly fails to overcome the presumption that Georgia law applies. Plaintiff argues that these principles

---

[15] The parties contest the exact domiciles of the other Defendants, but ultimately even accepting Plaintiff's contention that almost all Defendants are Illinois residents would not change the choice-of-law analysis.

strongly favor the application of Illinois products liability law because Abbott is domiciled in Illinois, and Georgia has no interest in insisting that Georgia law applies to a non-resident manufacturer to the detriment of a resident of its state. [See 104, at 14–15.] The thrust of this argument seems to be that Georgia law is less favorable to her (at least with regard to strict products liability claims) than Illinois law would be, which favors application of Illinois law. But this is not an appropriate policy consideration for the Court to consider in this analysis. See *Townsend*, 879 N.E.2d at 907 ("We trust that characterizations such as 'pro-consumer' or 'pro-business' will not often appear in future choice-of-law cases."). Moreover, the case that Plaintiff cites in support of its argument that § 6 principles favor the application of Illinois law is distinguishable. See *Smith*, 753 F. Supp. 2d at 748. In *Smith*, the court was specifically considering a state's policy interest in imposing punitive damages and concluded that a state's interest in imposing or not imposing such damages on its own residents strongly favors applying the law of the state where the defendant was domiciled. *Id*. Punitive damages are not an issue here, and Plaintiff has not identified any other policy consideration that would warrant application of Illinois law over Georgia law.

In sum, Georgia law applies to the substance of Plaintiff's causes of action.

> b.    *Strict Products Liability and Strict Products Liability—Failure To Warn Causes of Action*

The Court will begin its claim-level analysis with Plaintiff's strict products liability and strict products liability—failure to warn claims against Abbott.

Abbott argues that Plaintiff has failed to state a claim for strict products liability against Abbott because Georgia law applies and, in Georgia, a strict products liability claim can be maintained only against the manufacturer of a product. According to Abbott, Plaintiff's complaint only alleges that TAP manufactured Lupron during the relevant time period and,

therefore, the strict products liability claims against Abbott must be dismissed. Plaintiff maintains that it has alleged that Abbott is the manufacturer of Lupron and, in any event, Illinois law applies to her strict products liability claims.

As set out in the above analysis, Georgia law applies to the substance of Plaintiff's claims. To state a claim for strict products liability under Georgia law, a plaintiff must allege that "(1) the defendant manufactured the allegedly defective product; (2) the allegedly defective product was not merchantable and reasonably suited for its intended use when the defendant sold it; and (3) the allegedly defective product proximately caused the plaintiff's injuries." *Edwards v. Wis. Pharmacal Co., LLC*, 987 F. Supp. 2d 1340, 1345 (N.D. Ga. 2013) (citing *Chi. Hardware & Fixture Co. v. Letterman*, 510 S.E.2d 875, 877–78 (Ga. Ct. App. 1999)); *Moore v. Mylan Inc.*, 840 F. Supp. 2d 1337, 1334 (N.D. Ga. 2012) (applying Georgia law). Plaintiff, in other words, must establish "that the product or products that allegedly caused [the injury] were, in fact, manufactured or supplied by the defendants in this case." *Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1355 (N.D. Ga. 2008) (quoting *Hoffman v. AC&S, Inc.*, 548 S.E.2d 379, 382 (Ga. Ct. App. 2001)). A defendant that is not the manufacturer of an allegedly defective product cannot be held strictly liable under a theory of strict liability. See *Vax v. Albany Lawn & Garden Ctr.*, 433 S.E.2d 364, 366 (Ga. Ct. App. 1993) (citing *Ellis v. Rich's, Inc.*, 212 S.E.2d 373, 376 (Ga. 1975)). Therefore, the viability of Plaintiff's claims depends on whether Plaintiff has adequately alleged that Abbott is responsible for manufacturing the Lupron with which she was injected.

Plaintiff's complaint alleges the following facts about Abbott's actions. Plaintiff alleges that Abbott owns and controls a fifty percent stake in TAP and that, by agreement with Takeda Ltd., TAP, and another TAP subsidiary, Abbott jointly developed and marketed pharmaceutical products for the American and Canadian markets during the relevant time period. [1, ¶¶ 6–7.]

Plaintiff also alleges that TAP "is directed and controlled by Abbott," and that TAP, along with those companies responsible for its actions (including Abbott) is responsible for the research, development, testing, manufacturing and sales, distribution, and marketing of Lupron. [*Id.*, ¶¶ 8, 27, 37.] Plaintiff specifies that all references to "Defendant" or "TAP" in the complaint are specifically meant to reference Abbott as well. [*Id.*, ¶ 9.] Plaintiff also alleges that Lupron is defective in that it leads to bone loss in users, and this defect caused her injuries. [*Id.*, ¶¶ 13–15.]

Drawing all reasonable inferences in Plaintiff's favor, as the Court must do at the motion to dismiss stage, see *Killingsworth*, 507 F.3d at 618, the Court finds that Plaintiff has alleged that Abbott had a direct role in the manufacturing process for Lupron through its agreement with TAP and others to develop products for the American market and through its involvement with TAP. Abbott argues that Plaintiff's allegations only point to liability based on its ownership of TAP and Abbott cannot be liable for TAP's actions by virtue of that ownership. [See 100, at 8.] Plaintiff also alleges, however, that Abbott was a joint participant in the development of pharmaceutical products with TAP and thus alleges some participation on Abbott's part in Lupron manufacturing beyond its ownership of TAP. [See 1, ¶ 7.] Therefore, Plaintiff has sufficiently stated a claim for strict products liability under Georgia law against Abbott.

At this point, the Court must take a moment to address the procedural history of this case and how this history affects the analysis of Abbott's motion. The Court is cognizant of the fact that Plaintiff's complaint was filed in 2015 and, since the complaint was filed, Judge Gottschall has issued a summary judgment opinion addressing some threshold issues specifically relating to Abbott. Defendants argue that it has already been established on summary judgment that Takeda Ltd., and not any other Defendant, was the entity responsible for manufacturing Lupron, and, as

such, Abbott cannot be liable to Plaintiff for strict products liability under Georgia law.  [See 107, at 11].

Judge Gottschall's summary judgment opinion does state that "[t]he parties agree that in 2004, Lupron was manufactured by [Takeda Ltd.] and distributed in the United States by TAP—the [Takeda Ltd.]/Abbott joint venture."  [See 95, at 6.]   And the premise of the summary judgment opinion itself is that Abbott's only role in relation to Lupron in 2004 was (1) its role as a partial owner of TAP; and (2) its provision of distribution services to TAP pursuant to a service agreement between Abbott and TAP.  Abbott argued that this role did not make it a viable defendant in Plaintiff's action.  Judge Gottschall disagreed, noting that Abbott "was responsible for every aspect of the distribution chain" for TAP and therefore genuine issues of material fact exist regarding Abbott's involvement in Lupron's distribution.  [95, at 12.]  As such, there appears to be some tension between the law of the case (as established in Judge Gottschall's earlier opinion) and Plaintiff's complaint (which is usually the only document that the Court may consider on a Rule 12(b)(6) motion to dismiss).  See *Minch v. City of Chi.*, 486 F.3d 294, 301 (7th Cir. 2007) ("[T]he law of the case doctrine reflects the rightful expectation of litigants that a change of judges midway through a case will not mean going back to square one.") (internal alterations and citation omitted).

The Court concludes that it is only appropriate on this motion to dismiss to consider the allegations that are set out in Plaintiff's complaint in analyzing whether Plaintiff has adequately stated a claim for each cause of action.  Judge Gottschall assumed in her opinion that the parties agreed that Takeda Ltd. was the manufacturer, but Judge Gottschall did not specifically rule on summary judgment that Takeda Ltd. (and only Takeda Ltd.) was the manufacturer of Lupron.  Contra *Seed v. Vanet*, 2009 WL 5216937, at *1 (W.D. Wis. Dec. 22, 2009) (where court ruled on

summary judgment before a motion to dismiss, the court's "ruling on the parties' motions for summary judgment, which was made using facts outside the pleadings, must be considered in addressing plaintiffs' motion to dismiss because that ruling is the law of this case"). Therefore, it has not been definitively established as the law of the case that Abbott was uninvolved with Lupron's manufacture such that Plaintiff's strict products liability causes of action must be dismissed. See *Cardenas v. RIA Telecommunications, Inc.*, 2001 WL 536043, at *2 (N.D. Ill. May 18, 2001) (where first judge did not consider the merits of an argument on a motion to dismiss, nothing prevented second judge from doing so).[16]

In sum, the Court denies Abbott's motion to dismiss Plaintiff's strict products liability and strict products liability—failure to warn causes of action against it. This ruling is without prejudice to Abbott (or any other Defendant against whom this claim may ultimately proceed) moving for summary judgment at any time on this issue.[17]

> ### c.    *Negligence Cause of Action*

Abbott argues that Plaintiff's complaint is too vague and conclusory to plead any of the elements of a negligence claim under governing law.

---

[16] The Takeda-related Defendants have also attached to their motion to dismiss purported copies of the Lupron labels from 2004, indicating that Takeda Ltd. was Lupron's manufacturer during the relevant time period. See [97, Ex. G (Lupron 2004 Label)]; [*id.*, Ex. H (Lupron 2005 Label)]. Defendants ask that the Court take judicial notice of these documents. The Court declines to do so. Before taking judicial notice of a document, even one in the public record, a court must be satisfied that its contents are "beyond reasonable dispute." *Gen. Elec. Capital Corp.*, 128 F.3d at 1081; see also Fed. R. Evid. 201(b) (a fact may be subject to judicial notice if it "is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). The accuracy of these labels has not been definitively established such that the Court can accept their contentions at this stage of the case.

[17] The Court also notes that Plaintiff appears to argue at various points in her opposition that Takeda Ltd. was in fact the manufacturer of Lupron during the relevant time period, although elsewhere she argues that Abbott was involved as well. See, *e.g.*, [104, at 8] ("[T]he Takeda defendants admit that [Takeda Inc.] manufactured the Lupron at issue."); [*id.*, at 15] ("Plaintiff alleges that Abbott manufactured, compounded, tested, distributed, recommended, and marketed the Lupron administered to her.").

In Georgia, to state a claim for negligence, a Plaintiff must allege: (1) "a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm;" (2) "a breach of this standard;" (3) "a legally attributable causal connection between the conduct and the resulting injury;" and (4) "some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." *Moore v. Mylan Inc.*, 840 F. Supp. 2d 1337, 1351 (N.D. Ga. 2012) (quoting *Dixie Grp., Inc. v. Shaw Indus. Grp.*, 693 S.E.2d 888, 895 (Ga. Ct. App. 2010)). Georgia law recognizes two negligence-based causes of action in the products liability context: the sale of a defective product, and failure to warn of the product's dangers. *Edwards*, 987 F. Supp. 2d at 1344. These causes of action implicate separate duties on the part of the product manufacturer—the duty to exercise reasonable care in manufacturing products so that they are reasonably safe for intended and foreseeable uses, and the duty to warn the public of those damages arising from their products' use about which they know or reasonably should know. *Id.* Otherwise, these causes have the same elements, see *id.* (citing *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 211 (Ga. 1994)), although failure-to-warn negligence claims in the context of pharmaceuticals are constrained by the learned intermediary doctrine. See *Frazier v. Mylan Inc.*, 911 F. Supp. 2d 1285, 1289 (N.D. Ga. 2012). Negligence-based products liability claims differ from those that sound in strict liability because negligence-based claims focus on the actions of the defendant, while strict liability claims focus on the product itself. *Butts v. Stryker Corp.*, 2014 WL 12772370, at *3 n.5 (S.D. Ga. June 30, 2014) (applying Georgia law).

Plaintiff's claim for negligence against Abbott must be dismissed. Plaintiff lists various acts that purportedly represent the negligence of all Defendants, including negligence "in formulating, analyzing, designing, fabricating, manufacturing, supplying, distributing,

merchandizing, advertising, promoting, packaging, marketing, selling, and recommending Lupron in a defective condition," [1, ¶ 23(a)], "[f]ailing to adequately test Lupron before securing FDA approval," [*id.*, ¶ 23(d)], "[f]ailing to advise Plaintiffs and their physicians of the dangers associated with the use of Lupron," [*id.*, ¶ 23(e)], and "[m]isrepresenting the dangers associated with the use of the drug," [*id.*, ¶ 23(f)]. Even assuming that these all represent breaches of a duty owed to Plaintiff, Plaintiff does not allege that any particular duty is being breached with these acts or how Abbott owed that duty to Plaintiff (even assuming the truth of Plaintiff's allegations that Abbott played some role in the manufacturing process).[18] Without more, Plaintiff's general allegations of "negligence" on the part of Defendants are insufficient to state a clam for negligence against Abbott and must be dismissed. See *Barnes v. AstraZeneca Pharmaceuticals LP*, 253 F. Supp. 3d 1168, 1173–74 (N.D. Ga. 2017) (applying Georgia law) (dismissing negligence claim where plaintiff had failed to plead all of the claim's required elements); *Butts*, 2014 WL 12772370, at *4 (dismissing negligence claim where "the complaint provides no other insight as to how Defendant breached the duty of care it owed" to plaintiff and "leaves the Court to speculate as to * * * whether the [product's] failure was the product of Defendant's negligence").

---

[18] Plaintiff requests [105] that the Court take judicial notice of Abbott's 2003 Form 10-K filed with the SEC, which provides additional detail regarding Abbott's involvement with Lupron. For the reasons that the Court has previously stated regarding the parties' various requests for judicial notice, the Court declines to do so because these facts are subject to reasonable dispute. See *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354–55 (7th Cir. 1995) (district court was correct not to take judicial notice of Form 10-K because the contents were subject to dispute, and the fact in question was not capable of accurate and ready determination by resort to the document); *City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*, 2015 WL 1478565, at *5 (E.D. Wis. Mar. 31, 2015) (refusing to take judicial notice of SEC filings because the parties disputed the accuracy of the information in the documents). Moreover, even if the Court were inclined to take judicial notice of these facts, this additional detail does not provide any further insight into any duty that Abbott may have owed to Plaintiff or how that duty was breached. Similarly, taking into consideration the facts set out in Judge Gottschall's summary judgment opinion would not materially help Plaintiff's negligence claim against Abbott survive because these facts do not allege any duty or breach of duty on Abbott's part. [See 95.]

Therefore, Plaintiff's negligence cause of action against Defendant is dismissed.

### d.    Breach of Express and Implied Warranty Causes of Action

Abbott argues that both of Plaintiff's warranty claims are time-barred and that, in any event, these warranty claims also fail substantively. The Court need not reach the first argument because, even if these claims are timely, Plaintiff has not sufficiently stated a claim for breach of express warranty or breach of implied warranty.

To state a claim for a breach of an express warranty, "Georgia law requires some form of 'affirmation of fact or promise made by the seller to the buyer which relates to the goods,' a 'description of the goods,' or a 'sample or model' made part of the basis of the bargain." *Barnes*, 253 F. Supp. 3d at 1174 (quoting Ga. Code Ann. § 11-2-313).[19] Plaintiff alleges that "Defendants made certain affirmative claims * * * which represented Lupron to be a safe and efficacious drug treatment for women" [1, ¶ 17], and that "Defendants expressly represented to the medical community and Lupron users that Lupron had been or was adequately tested for its intended use, that it was safe and fit for its intended purposes, and that it was of merchantable quality," [*id.*, ¶ 45]. While these allegations generally refer to representations made to medical community and the community of Lupron users, Plaintiff does not identify any specific warranty that Abbott made to her about Lupron that could form the basis of her claim, nor does she identify the content of any statement by Abbott. See *Barnes*, 253 F. Supp. 3d at 1174 ("Plaintiff's failure to identify any specific statements upon which an express warranty could be based dooms this claim.") (internal quotation marks and citation omitted); *Goodson v. Boston*

---

[19] In her opposition brief, Plaintiff states in regard to the timeliness of her breach of warranty claims that her use of Lupron "was not a 'transaction in goods'" but a provision of a service and therefore not subject to Georgia's enactment of the Uniform Commercial Code in this state statute. [104, at 6.] But accepting this representation would not save Plaintiff's claims because breach of warranty claims may only be brought in relation to a sale of goods. See *Gee v. Chattahoochee Tractor Sales, Inc.*, 323 S.E.2d 176, 178 (Ga. Ct. App. 1984) ("The warranty provisions of the UCC do not apply to a 'service' contract.").

*Scientific Corp.*, 2011 WL 6840593, at *5 (N.D. Ga. Dec. 29, 2011) (dismissing express warranty claim where plaintiff only alleged that the defendant had made assurances that the products at issue "were safe and reasonably fit for their intended purposes"). Thus, Plaintiff's express warranty claim must be dismissed.

There are two kinds of implied warranties under Georgia law: the implied warranty of merchantability and the implied warranty of particular purpose. See *Presto v. Sandoz Pharm. Corp.*, 487 S.E.2d 70, 75 (Ga. Ct. App. 1997) (citing Ga. Code Ann. §§ 11-2-314 to 315). Plaintiff's cause of action only implicates the implied warranty of merchantability, as she has not alleged that she used Lupron for any purpose other than its ordinary use. See *Gray*, 2011 WL 3022274, at *7. To recover based on a breach of the implied warranty of merchantability, a plaintiff must show "that there was a defect, that the defect existed at the time of sale, and that the defect made the product unmerchantable." *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 2017 WL 2536846, at *10 (N.D. Ga. June 9, 2017) (applying Georgia law).

For both express and implied warranty claims, a plaintiff must allege privity between herself and the defendant. See *Wheeler v. Novartis Pharm. Corp.*, 944 F. Supp. 2d 1344, 1354 (S.D. Ga. 2013) (applying Georgia law); see also *Butts*, 2014 WL 12772370, at *4 (citing *Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558, 560–61 (Ga. 1996)); *Edwards*, 987 F. Supp. 2d at 1346 (applying Georgia law and stating that "a plaintiff who does not plead facts that allow the court to infer that he is in privity with the defendant or part of the statutory class of protected persons fails to state a claim for breach of an express or implied warranty"); *Goodson*, 2011 WL 6840593, at *5. Plaintiff has not alleged that she purchased Lupron from Abbott; she alleges that she was "prescribed" Lupron, not that she purchased it. [1, ¶ 19.] Georgia law does provide that privity may be established by the extension of an express warranty to the ultimate consumer

from the manufacturer. See *Lee v. Mylan Inc.*, 806 F. Supp. 2d 1320, 1327 (M.D. Ga. 2011) (applying Georgia law and refusing to dismiss breach of express and implied warranty claims on the basis of lack of privity where plaintiff alleged that drug manufacturer had made express promises to the patient). But Plaintiff also has not sufficiently pled that Abbott has made any express warranties to her, as described above, that would establish privity as required for a breach of warranty claim. Therefore, Plaintiff's breach of implied warranty claim also fails. See *Wheeler*, 944 F. Supp. 2d at 1354; *Edwards*, 987 F. Supp. 2d at 1346 (dismissing breach of warranty claims where plaintiff did not allege that defendants sold the allegedly defective product to him, "[a]nd common sense suggests that they did not"); see also *Bryant v. Hoffmann-La Roche, Inc.*, 585 S.E.2d 723, 731 (Ga. Ct. App. 2003) (where plaintiff did not purchase drug directly from the manufacturer, plaintiff did not fall into class of third-party beneficiaries who could recover for a breach of implied warranty claim, and thus no recovery on this claim was possible).

### e.    *Fraudulent Misrepresentation Cause of Action*

Abbott argues that Plaintiff's fraudulent misrepresentation claim fails under either the heightened pleading standard of Rule 9(b) or the basic standard of Rule 8.

To state a claim for fraud under Georgia law, Plaintiff must allege "(1) a false representation by the defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff[;] and (5) damage to the plaintiff." *Barnes*, 253 F. Supp. 3d at 1175 (citation omitted). Furthermore, when alleging fraud, a plaintiff must satisfy the pleading standard of Rule 9(b). Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the heightened pleading standard of Rule 9(b), the

circumstances [of the alleged misrepresentation] must be pleaded in detail.  The who, what, when, where, and how: the first paragraph of any newspaper story." *Blankenship v. Pushpin Holdings, LLC*, 2015 WL 5895416, at *7 (N.D. Ill. Oct. 6, 2015) (internal quotation marks omitted; citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).  Rule 9(b) specifically requires alleging with particularity: "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Id.* (quoting *U.S. ex rel. Grenadyor v. Ukranian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014)).

The Court agrees that Plaintiff has failed to plead her claim with the requisite specificity.  Plaintiff alleges in general terms that Defendants made misrepresentations regarding Lupron's safety "through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, and notice letters, beginning in the 1990's and continuing into the 2000's."  [1, ¶ 59.]  But Plaintiff has not alleged who made these statements (other than Defendants, without specifying which Defendant made which statement), where and when these statements were made (other than to say sometime in the 1990s-2000 in Georgia and elsewhere), or how exactly Lupron's safety was misrepresented.  Without such particularized allegations, Plaintiff's fraudulent misrepresentation claim cannot satisfy Rule 9(b).  See *Barnes*, 253 F. Supp. 3d at 1175 (dismissing fraudulent misrepresentation claim against drug manufacturer where plaintiff only made "blanket allegation[s]" without any further specificity, "which is fatal to a fraud claim") (internal alterations and citation omitted); *Brazil v. Janssen Research & Dev. LLC*, 249 F. Supp. 3d 1321, 1339–40 (N.D. Ga. 2016) (dismissing fraud-based claims against drug manufacturer where "Plaintiff does not state the who, what, when, where, and how of the facts supporting the fraud claims").

Therefore, Plaintiff's fraudulent misrepresentation claim against Abbott is dismissed.

*f.      Negligent Misrepresentation Cause of Action*

Abbott also argues that Plaintiff has failed to state a claim for negligent misrepresentation against it. To state a claim for negligent misrepresentation, Plaintiff must show "'(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.'" *Marquis Towers, Inc. v. Highland Grp.*, 593 S.E.2d 903, 906 (Ga. Ct. App. 2004) (quoting *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 479 S.E.2d 727, 729 (Ga. 1997)). This type of claim "stems from the policy that '[o]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used.'" *Swicegood*, 543 F. Supp. 2d at 1356 (quoting *Benefit Support, Inc. v. Hall Cty.*, 637 S.E.2d 763, 773 (Ga. Ct. App. 2006)). In Georgia, "a negligent misrepresentation claim is viable only when a plaintiff can allege and prove direct communication with a defendant and specific reliance on that defendant's communication." *Patel v. Patel*, 761 F. Supp. 2d 1375, 1382 (N.D. Ga. 2011) (citing *Holmes v. Grubman*, 691 S.E.2d 196, 200 (Ga. 2010)).

Plaintiff's negligent misrepresentation claim against Abbott fails because she has not alleged any specific misrepresentations by Abbott on which Plaintiff relied. Plaintiff generally alleges that she relied on misrepresentations of Lupron's safety, but she does not point to a specific misrepresentation attributable to Abbott (as opposed to any other Defendant) on which this reliance was based. See, *e.g.*, [1, ¶ 17] ("Defendants made certain affirmative claims * * *

which represented Lupron to be a safe and efficacious drug treatment for women with certain gynecological problems"); [*id.*, ¶ 69] ("Defendants represented, among other things, that Lupron had been tested and found to be safe and effective for the use as an injectable drug for the treatment of endometriosis.")  Plaintiff need not plead these claims with the specificity required by Rule 9(b), but she still must meet the plausibility standard of Rule 8.  See *Gray*, 2011 WL 3022274, at *5.  Without allegations pointing to Abbott's statements on which Plaintiff relied before being injected with Lupron, Plaintiff's complaint does not provide Abbott with notice of the claims against it under Rule 8's pleading standard.  Therefore, Plaintiff has failed to state a claim against Abbott for negligent misrepresentation.

### g.  *Leave to Amend*

In sum, Abbott's motion to dismiss Plaintiff's complaint is denied as to Plaintiff's claims for strict products liability and strict products liability—failure to warn, and the motion is granted as to Plaintiff's other claims.  Specifically, Plaintiff's claims for negligence, breach of express warranty, breach of implied warranty, fraudulent misrepresentation, and negligent misrepresentation are dismissed without prejudice.

Abbott (along with the other Defendants) requests that all dismissals be with prejudice because this is effectively Plaintiff's fourth complaint between the First Lawsuit and the instant action.  [See 100, at 15; 107, at 15.]  Plaintiff requests that, to the extent any of her claims are dismissed, she be given leave to amend her complaint.  [See 104, at 20.]  The Court will grant Plaintiff leave to amend her complaint.  The Court is cognizant of the long procedural history.  However, in this action, Plaintiff has not yet amended her complaint, and it is possible that Plaintiff may still be able to state a viable claim for some of her causes of action.  Therefore, Plaintiff has until April 24, 2018 to file an amended complaint against Abbott (as well as

TPNA/TPUSA and TAP or its proper successor), if she believes that she can assert claims beyond the surviving strict products liability claims against Abbott, consistent with this opinion.

## IV.    Conclusion

For the foregoing reasons, Defendants' motions [96] and [99] are granted in part and denied in part. The motion to dismiss TAP as a Defendant pursuant to Rule 12(b)(5) is granted to the extent that Plaintiff is given until May 22, 2018 to serve an amended complaint upon a proper defendant (whether that is TAP or a proper successor to TAP). If Plaintiff fails to serve a proper defendant by this date, TAP will be dismissed from the case. All claims against Defendant Takeda Inc. (and Takeda Ltd., to the extent this is the party Plaintiff intended to name) are dismissed with prejudice. All claims against Defendant TPNA are dismissed without prejudice. Plaintiff's claims against Defendant Abbott for negligence, breach of express warranty, breach of implied warranty, fraudulent misrepresentation, and negligent misrepresentation are dismissed without prejudice. Plaintiff can proceed against Abbott on her claims for strict products liability and strict products liability—failure to warn. Plaintiff is given until April 24, 2018 to file an amended complaint consistent with this opinion, if Plaintiff believes that she can overcome the deficiencies identified above for the dismissed claims. This case is set for further status hearing on May 24, 2018 at 9:00 a.m.


Date: March 27, 2018

_____
Robert M. Dow, Jr.
United States District Judge