IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRY PAULSEN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES, ABBVIE INC., TAKEDA PHARMACEUTICALS U.S.A., INC., and TAP PHARMACEUTICAL PRODUCTS, INC.,<br><br>Defendants. | Case No. 1:15-cv-04144<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBVIE INC.'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO RULE 12(b)(6)**

Plaintiff filed her initial complaint (substantially similar to her Second Amended Complaint in this action) in the Eastern District of New York back in 2010. That complaint, like Plaintiff's latest complaint here, purported to assert product liability and other claims against Abbott Laboratories ("Abbott"), Takeda Pharmaceuticals U.S.A., Inc. ("TPUSA"), TAP Pharmaceutical Products, Inc. ("TAP"), and now-dismissed Takeda Chemical Industries, Inc. ("Takeda Inc."), arising out of injuries that Plaintiff allegedly sustained after her physician administered a prescription drug, Lupron Depot ("Lupron"), to Plaintiff in 2004, nearly fifteen (15) years ago. Plaintiff's initial complaint did not name AbbVie Inc. ("AbbVie") as a defendant. And Plaintiff never sought to add AbbVie as a defendant in that case before it was dismissed in May 2014—despite the fact that, as Plaintiff now alleges, AbbVie had assumed the assets and liabilities related to Lupron over a year earlier, back in December 2012. Nor did she name AbbVie as a defendant in the original complaint she filed in this action in May 2015. In

fact, it was not until April 2018—over five years after AbbVie allegedly took "the sales, employees, and liabilities associated with Lupron"—that Plaintiff added AbbVie as a defendant to this case, alleging for the very first time that AbbVie is liable "as a successor in interest of TAP, for all acts, omissions of TAP in connection with Lupron product[.]" (Dkt 143, Second Am. Compl. ("SAC") ¶ 10.)

Plaintiff's attempt to add AbbVie at this juncture is too little, too late. The complaint is time-barred as to AbbVie because it was filed nearly fifteen (15) years after the date of the alleged incident and over three (3) years past any statute of limitations period that (under even the most generous of standards) may be applicable to Plaintiff's claims in this case. And, as explained below, there are no circumstances under which the latest complaint relates back to Plaintiff's initial complaint under Federal Rule of Civil Procedure 15(c).

For these reasons, as discussed below, Plaintiff's amended complaint as to AbbVie should be dismissed with prejudice. Additionally, the amended complaint should be dismissed with prejudice against AbbVie for the reasons stated in Section II of the Memorandum of Law in Support of Defendant Abbott Laboratories' Motion to Dismiss Second Amended Complaint Pursuant to Rules 12(b)(6) and 9(b), and Sections II-III of the Memorandum of Law in Support of Defendants Takeda Pharmaceuticals U.S.A., Inc. and TAP Pharmaceutical Products, Inc.'s Motion to Dismiss Second Amended Complaint Pursuant to Rules 12(b)(5) and 12(b)(6). AbbVie joins these sections of the other Defendants' motions to dismiss in their entirety

**BACKGROUND**

The factual and procedural predicates to Plaintiff's Second Amended Complaint are well known to this Court, as outlined in its Memorandum Opinion and Order ("Opinion") on Defendants' motions to dismiss Plaintiff's previous complaint. (*See* Dkt 111, Mem. Op. and

Order, at 2-9.) AbbVie incorporates by reference as though fully set forth herein the Court's discussion of the factual and procedural background of this case. In addition, as relevant to the instant Motion, AbbVie sets forth as follows.

I.     **Procedural History**

Plaintiff filed her initial complaint (substantially similar to the complaints in this action) against Abbott, TPUSA (formerly Takeda Pharmaceuticals North America, Inc. or "TPNA"), TAP, and Takeda Inc.[1] in the Eastern District of New York on April 20, 2010. (*Cardenas & Paulsen v. Abbott Labs. et al.*, No. 10-CV-1745-RRM-VVP (E.D.N.Y.), Dkt. 1.)

In her second amended complaint in that action (and after the case was transferred to the Northern District of Illinois), Plaintiff alleged—as she does in her latest complaint—that she suffered injuries after she "was injected with Lupron on two occasions beginning on or about February 2004 and ending on or about March 2004." (*Compare Cardenas & Paulsen v. Abbott Labs. et al.*, No. 1:11-cv-04860 (N.D. Ill.), Dkt. 45 at ¶ 22 *with* Dkt. 143, SAC ¶¶ 1, 21 (making similar allegations).) She now alleges that "[s]hortly after being injected with Lupron, [she] began to develop serious bone and joint pain[,]" and that she "was treated for this joint pain and was subsequently diagnosed with severe joint arthopathy in April of 2008" and "later diagnosed with osteoporosis in May of 2010[.]" (Dkt. 143, SAC ¶ 22.)

In February and March 2004, when Plaintiff alleges that she received two shots of Lupron (*id.* ¶ 21), the company responsible for Lupron business in the United Sates was TAP. (*See* Dkt. 111, Mem. Op. and Order, at 4 (noting Defendants' position); Dkt. 143, SAC, ¶ 6.) TAP was jointly and equally owned by Takeda America Holdings (itself a wholly-owned

---

[1] Throughout briefing in this case, Plaintiff has repeatedly confused or conflated Takeda Chemical Industries, Ltd. ("Takeda, Ltd.") with Takeda Inc., which does not exist. Regardless, "any claims against either entity are indisputably time-barred," and have been dismissed with prejudice. (Dkt. 111, Mem. Op. and Order, at 18-19.)

subsidiary of Takeda Pharmaceutical Company Ltd.) and Abbott. (*See* Takeda 2008 Annual Report, at 10, excerpt attached hereto as Ex. A;[2] *see also* Dkt. 143, SAC ¶ 5 (Abbott 50% owner of TAP).)

TAP continued to be the entity responsible for the Lupron business through April 30, 2008, when the joint venture concluded. (*See* Takeda 2008 Annual Report, at 10 (Ex. A); Abbott 2008 Annual Report, at 47, excerpt attached hereto as Ex. B; *see also* Dkt. 111, Mem. Op. and Order, at 12 (taking judicial notice of Takeda 2008 Annual Report "for purposes of confirming that TAP dissolved in 2008"); Dkt. 143, SAC ¶ 7 ("Abbott and Takeda entered into an agreement to dissolve their joint venture operated through TAP.").) At that time, Abbott exchanged its fifty-percent equity interest in TAP for the assets, liabilities, and employees related to TAP's Lupron business. (*See* Abbott 2008 Annual Report, at 47 (Ex. B); *see* Dkt. 143, SAC ¶ 7 ("Abbott and Takeda evenly divided the value of the joint venture with Abbott[] acquiring all assets, employees, and liabilities related to Lupron.").) In December 2012 (through January 1, 2013) Abbott split into two separate, publicly-traded companies. The pharmaceutical products business, including Lupron, went to AbbVie. (*See* Abbott 2013 Annual Report, at 59, excerpt attached hereto as Ex. C; *see also* Dkt. 143, SAC ¶ 10 ("In December 2012, AbbVie spun off from Abbott taking the sales, employees, and liabilities associated with Lupron.").)

Over the course of several years while the original action was pending, Plaintiff had ample opportunity to litigate her claims, lodging multiple amended complaints (one of which was dismissed for failure to state a claim), filing a motion to dismiss defendants' statute of

---

[2] This Court has previously held that it may take judicial notice of adjudicative facts, including those contained in annual reports, where such facts are "not subject to reasonable dispute" and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." (*See* Dkt. 111, Mem. Op. and Order, at 12 (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997)).)

limitations defense (which was denied), and engaging in the exchange of substantial written discovery and discovery motion practice. In October 2013, nearly a year *after* AbbVie assumed the assets and liabilities relating to Lupron, this Court dismissed the case for want of prosecution and entered judgment. (*Cardenas & Paulsen*, No. 1:11-CV-04860, Dkt. 115-16.) The dismissal was subsequently vacated, and then shortly thereafter, on May 30, 2014, the case was voluntarily dismissed. (*Id.*, Dkt. 143-44.) Just short of a year later, on April 24, 2015, Plaintiff filed a Motion to Reopen her action, which the Court denied *sua sponte*. (*Id.*, Dkt. 146-47.)

Plaintiff filed her first complaint in this action on May 11, 2015, once again naming only Abbott, TPUSA (formerly TPNA), TAP, and Takeda Inc. as Defendants. (Dkt. 1.) Those Defendants moved to dismiss on a number of grounds on July 6, 2015. (Dkt. 25-26, 28-29.) On November 20, 2015, the Court allowed Plaintiff additional briefing to address which state's law governed the refiling of her complaint (Dkt. 49), and on January 6, 2016, allowed her to conduct discovery regarding Abbott's contention that it is not a real party in interest as to Plaintiff's claims in this case, such that the Illinois Borrowing Statute categorically time-bars Plaintiff's claims (Dkt. 52). Abbott moved for summary judgment on the issue of real party in interest on August 24, 2016. (Dkt. 70-71.) That motion was denied March 15, 2017. (Dkt. 94.)

On April 7, 2017, Abbott, TPUSA, Takeda Ltd., and TAP filed renewed motions to dismiss pursuant to Rules 12(b)(5), 12(b)(6), and 9(b). (Dkt. 96-97, 99-100.) On March 27, 2018, those Defendants' motions to dismiss were granted in part and denied in part. (Dkt. 111, Mem. Op. and Order, at 1-2.) Plaintiff's claims against Abbott for strict liability and strict liability—failure to warn were allowed to proceed because Plaintiff had alleged "some participation on Abbott's part in Lupron manufacturing beyond its ownership of TAP[.]" (*Id.* at 28.) The Court dismissed all claims as to TPUSA (formerly known as TPNA), ruling that

Plaintiff had failed to allege any fact that "connects TPNA to TAP and its alleged responsibility for Lupron-related activities, beyond their shared parent company [Takeda Ltd.]." (*Id*. at 21; *see also id*. (concluding that "Plaintiff simply has not alleged that TPNA was at all involved wtih TAP's activities relating to Lupron, and without such allegations her claims against TPNA are not plausible."). The dismissal, however, was without prejudice. (*Id.* at 22.) All claims against TAP were dismissed, but Plaintiff was given until May 22, 2018 to serve an amended complaint upon a proper defendant. (*Id.* at 17-18.) Finally, all claims against Takeda Ltd. and Takeda Inc. were dismissed with prejudice. (*Id.* at 18-19.)

## II. Plaintiff's Latest Complaint

On April 24, 2018, Plaintiff filed her First Amended Complaint, which attempted to resuscitate previously-dismissed claims against Abbott, TPUSA, and TAP. (Dkt. 117.) In addition, Plaintiff purported to assert new claims against AbbVie for the very first time. (*Id.* at ¶¶ 8, 22-77.) Plaintiff filed her Second Amended Complaint on July 6, 2018. (Dkt. 143.) Plaintiff's latest complaint is now focused almost exclusively on TAP and Abbott, and makes almost no specific allegations as to any other party. As to AbbVie specifically, Plaintiff alleges only that "[i]n December 2012, AbbVie spun off from Abbott taking the sales, employees, and liabilities associated with Lupron. AbbVie is, therefore liable, as a successor in interest of TAP, for all acts, omissions of TAP in connection with Lupron product[.]" (*Id.* ¶ 10.)

Additionally, as she did in her previous complaint, Plaintiff makes a series of non-specific allegations against "Defendants," and claims (improperly) that "All Defendants" are liable for her claims of strict liability, strict liability—failure to warn, negligence, and negligent misrepresentation (her fraudulent misrepresentation claim is now only against Abbott). (*Id.* ¶¶ 23-47, 58-63.) Such allegations are too vague and implausible to state a claim. (*See* Dkt 111, Mem. Op. and Order, at 21 (finding that similarly threadbare claims against TPNA were "not

plausible").)

## **LEGAL STANDARD**

"A motion to dismiss tests the sufficiency of a complaint, not the merits of a case." *RehabCare Grp. E., Inc. v. Certified Health Mgmt., Inc.*, No. 07 C 2923, 2007 WL 3334500, at *1 (N.D. Ill. Nov. 8, 2007). The Court must "accept all well-pleaded factual allegations in the complaint as true, drawing all reasonable inferences from those facts in [p]laintiff's favor." *Id.* At the same time, however, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted)); *see also Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014) ("[W]e need not accept as true any legal assertions or recital of the elements of a cause of action 'supported by *mere conclusory statements*.'") (emphasis added) (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013)).

With respect to a statute of limitations defense, "[w]hat a complaint must plead is enough to show that the claim for relief is plausible." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The limitations period is an affirmative defense, and complaints generally "need not anticipate defenses and attempt to defeat them." *Id*. But where, as here, a plaintiff herself alleges facts that are sufficient to establish a statute-of-limitations defense, "a district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred[.]" *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005); *see also Dandridge v. Cook County*, No. 12-cv-5458, 2013 WL 3421834, at *2 (N.D. Ill. July 8, 2013) (Dow, J.) (collecting cases and noting same). Here, Plaintiff's Second Amended Complaint should be dismissed as to AbbVie because it is time-

barred and does not relate back to Plaintiff's initial complaint under Federal Rule of Civil

Procedure 15(c).

## ARGUMENT

**I. Plaintiff's Claims Against AbbVie Are Untimely And Should Be Dismissed Pursuant To The Applicable Statutes Of Limitations.**

Under the most generous reading of Plaintiff's complaint, the statute of limitations periods applicable to Plaintiff's claims are two years for her strict liability, strict liability—failure to warn, negligence, and negligent misrepresentation claims, *see* 735 ILCS 13/202; O.C.G.A. § 9-3-33, and four or five years for her fraud claim, *see* 735 Ill. Comp. Stat. 5/13-205 (5 years); Ga. Code Ann. § 9-3-31 (4 years).[3] Plaintiff alleges that she was injected with Lupron on two occasions "beginning on or about February 2004 and ending on or about March 2004," but "had no facts sufficient to place her on inquiry notice of the claims set forth [in her complaint] within two years of the filing of [her original complaint]." (Dkt. 143, SAC ¶¶ 21, 23.) Thus, Plaintiff's longest, five-year window to file suit opened, at the very latest, on April 20, 2010 (when Plaintiff filed her original complaint), and therefore closed on April 20, 2015.

Plaintiff filed her original complaint relating to the injuries she allegedly suffered as a result of her use of Lupron on April 20, 2010. (*Cardenas & Paulsen*, No. 10-CV-1745-RRM-VVP, Dkt. 1.) That complaint named only Abbott, TPUSA (formerly TPNA), TAP, and now-dismissed Takeda Inc. as defendants. (*Id.*) Plaintiff never added AbbVie as a defendant to that case before it was voluntarily dismissed in May 2014 (*see Cardenas & Paulsen*, No. 1:11-CV-

---

[3] Illinois courts (including federal courts sitting in diversity in Illinois) generally apply Illinois's statutes of limitations. (*See* Dkt. 52, Order, at 3-4.) If the Illinois Borrowing Statute, 735 ILCS 5/13-210, applies, however, then the Court will look to Georgia's statute of limitations law. (*Id.*) Whether the Illinois Borrowing Statute applies here depends on whether Abbott is a real party in interest, and on the current record, the Court has held that "genuine issues of material fact exist as to whether Abbott's involvement in Lupron's distribution was sufficient for this purpose." (Dkt. 95, Order, at 12.) For the purpose of AbbVie's current arguments, however, both Illinois's and Georgia's statutes of limitations operate to bar Plaintiff's claims, and thus there is no need to determine which state's law applies.

04860, Dkt. 143-44), even though AbbVie had assumed the assets and liabilities for Lupron over a year earlier, in December 2012. Plaintiff's initial complaint in this action, filed on May 11, 2015, similarly named only Abbott, TPUSA (formerly TPNA), TAP, and Takeda Inc. as Defendants. It was not until April 2018—over *three years* after the statute of limitations periods had expired—that Plaintiff named AbbVie as a defendant for the very first time. Accordingly, all of Plaintiff's claims stemming from her alleged use of Lupron are time-barred as to AbbVie and should be dismissed with prejudice.

## II. Plaintiff's Claims Against AbbVie Do Not Relate Back To Her Original Complaint.

Federal Rule of Civil Procedure 15 cannot save Plaintiff's claims. Under Federal Rule of Civil Procedure 15(c), new parties must be added before the applicable statutes of limitations run, unless their addition "relates back" to the original complaint. *See Solivan v. Dart*, 897 F. Supp. 2d 694, 700 (N.D. Ill. 2012). Here, Plaintiff's claims against AbbVie would not have been timely even if included in her initial complaint in this action (filed May 11, 2015). Accordingly, Plaintiff's claims against AbbVie survive only if the filing of her amended complaint relates back to her original complaint in her earlier action (filed April 20, 2010).

Federal Rule of Civil Procedure 15(c)(1) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when: … (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

After the Supreme Court's ruling in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), the Seventh Circuit has advised that "[t]he only two inquiries that the district court is now permitted to make in deciding whether an amended complaint relates back to the date of the original one are, first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a *mistake*, would have sued him instead or in addition to suing the named defendant; and second, whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself." *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559-560 (7th Cir. 2011) (emphasis added). The "mistake" requirement, however, is independent from the determination of whether the new party knew that the action would be brought against it; in other words, "in the absence of a mistake in the identification of the proper party, it is irrelevant for purposes of [Rule 15(c)(1)] whether or not the purported substitute party knew or should have known that the action would have been brought against him." *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998). Plaintiff claims are thus untimely for three reasons.

*First,* Plaintiff cannot prove that she made a mistake with regard to the identity of the defendants here. For years, the Seventh Circuit interpreted the third prong of Rule 15(c)(1) "to permit an amendment to relate back to the original complaint only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (internal quotation marks omitted) (quoting *Baskin*, 138 F.3d at 704). The Seventh Circuit also "repeatedly reiterated that 'relation back' on grounds of 'mistake concerning the identity of the proper party' does not apply where the plaintiff simply lacks knowledge of the proper defendant." *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006). Post-*Krupski*,

the Seventh Circuit has continued to follow its prior precedent that lack of knowledge does not constitute a mistake for purposes of Rule 15(c). *See, e.g.*, *Gomez v. Randall*, 680 F.3d 859, 864 n.1 (7th Cir. 2012); *Flournoy v. Schomig*, 418 Fed. Appx. 528, 532 (7th Cir. 2011) (unpublished).

Here, Plaintiff now claims that Abbott, TPUSA, and AbbVie are each liable as the successor in interest to TAP's liabilities (*see* Dkt. 143, SAC ¶¶ 2, 9 (Abbott), ¶¶ 4, 9 (TPUSA), ¶ 10 (AbbVie)), making clear that she does not know which one of three companies she wants to attempt to hold liable for her alleged injuries. Thus, she has not made a "mistake" concerning "identity," she simply lacks knowledge of the proper party to sue. *See Hall*, 469 F.3d at 596 ("Whether a plaintiff names a fictitious defendant like 'John Doe' because he does not know who harmed him or names an actual—but nonliable—railroad company because he does not know which of two companies is responsible for his injuries, he has not made a 'mistake' concerning 'identity' within the meaning of [Rule 15(c)(1)]. He simply lacks knowledge of the proper party to sue."); *see also Terry v. Chicago Police Dep't*, 200 F. Supp. 3d 719, 725 (N.D. Ill. 2016) ("Plaintiff's failure to determine the names of the officers (or other Defendants) who might be liable suggests lack of knowledge of the proper defendants, rather than a mistake in identity, at least as those concepts are understood in this circuit's case law."); *Dandridge*, No. 12-cv-5458, 2013 WL 3421834, at *3-5 (complaint did not relate back where plaintiff did not know the names of newly-added defendants before the expiration of the applicable limitations period; citing *Hall*, the Court explained that "[a] plaintiff has the burden of determining who is liable for her injuries and of doing so before the statute of limitations runs out").

*Second*, even if Plaintiff *did* make a mistake (and it is evident she did not), there was no reason for AbbVie to believe that Plaintiff failed to add it to any of her amended complaints due

to a mistake (as opposed to a conscious choice). As the Seventh Circuit has explained, "[a] potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose—unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were." *See Elan Motorsports*, 638 F.3d at 560 (citation omitted).

There was no "mere slip of the pen" here. It was well documented in the public domain that AbbVie assumed the liabilities for Lupron in December 2012,[4] over a year *before* Plaintiff's original lawsuit was dismissed. Plaintiff, however, never amended her complaint in that action to include AbbVie.[5] And, when Plaintiff re-filed her initial complaint in this action, she once again did not include AbbVie. The other named Defendants have repeatedly told Plaintiff over the course of this suit that AbbVie had the Lupron liabilities, to no effect. (*See, e.g.*, Dkt. 26, Abbott's Mem. in Support of its Mot. to Dismiss, at 4 (filed July 6, 2015).) At some point, it should have been safe for AbbVie to assume that there was no mistake, and that Plaintiff had purposefully decided not to include it in her lawsuit, for one reason or another (and likely because Plaintiff needs *Abbott* in the lawsuit, or the Borrowing Statute will apply, the Savings Statute will not, and the entire lawsuit will be dismissed as untimely). *See Fleece v. Volvo Constr. Equip. Korea, Ltd.*, No. 10 CV 4496, 2012 WL 171329, at *4 (N.D. Ill. Jan. 20, 2012) (Kim, J.) (collecting cases and noting that "[f]ollowing *Krupski*, numerous lower courts have held that *Krupski* precludes relation back when a plaintiff made an affirmative choice not to discover the identity of the new defendant").

---

[4] Plaintiff herself alleges that "in December 2012, AbbVie spun off from Abbott taking the sales, employees, and liabilities associated with Lupron," making this an adjudicative fact "not subject to reasonable dispute." (*See* Dkt. 143, SAC ¶ 10; Dkt. 111, Mem. Op. and Order, at 12.)

[5] As the Supreme Court provided in *Krupski*, "[i]nformation in the plaintiff's possession" may be relevant "if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." 560 U.S. at 548.

There is no way that after all this time—nearly fifteen (15) years after the alleged incident at issue, some eight years after the original lawsuit was filed, and over five years since AbbVie assumed Lupron liabilities—AbbVie knew or should have known that, absent some mistake, this action would have been brought against it. *See Springman v. AIG Mktg., Inc.*, 523 F.3d 685, 689 (7th Cir. 2008) ("When there is protracted and inexplicable delay in changing defendants, the plaintiff can no longer argue, under either the Illinois or the federal rule, that the defendant should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against th[at] party."); *see also Krupski*, 560 U.S. at 552, 554 ("When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met."; "To the extent the plaintiff's postfiling conduct informs the prospective defendant's understanding of whether the plaintiff initially made a 'mistake concerning the proper party's identity,' a court may consider the conduct.").

*Finally*, Plaintiff's delay in filing claims against AbbVie may significantly impair AbbVie's ability to defend itself. The events at issue allegedly occurred nearly fifteen (15) years ago. The availability of evidence deteriorates over time, and it is unclear what, if any, evidence regarding Plaintiff's claims (*e.g.*, testimony from Plaintiff's medical providers, among other things) still exists. For this reason, too, the Court should find that Plaintiff's claims against AbbVie are untimely.

## **CONCLUSION**

For all of the reasons stated above, as well as those in Section II of the Memorandum of Law in Support of Defendant Abbott Laboratories' Motion to Dismiss Second Amended

Complaint Pursuant to Rules 12(b)(6) and 9(b), and Sections II-III of the Memorandum of Law in Support of Defendants Takeda Pharmaceuticals U.S.A., Inc. and TAP Pharmaceutical Products, Inc.'s Motion to Dismiss Second Amended Complaint Pursuant to Rules 12(b)(5) and 12(b)(6), filed contemporaneously herewith, all of the claims against AbbVie should be dismissed with prejudice.

Dated: August 6, 2018

Respectfully submitted,

/s/ *Kathryn L. Dore*
Paula S. Quist (IL 6278287)
Nicole C. Henning (IL 6286386)
Kathryn L. Dore (IL 6306411)
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL 60601
Telephone: 312-782-3939
Facsimile: 312-782-8585
pquist@jonesday.com
nhenning@jonesday.com
kdore@jonesday.com

*Attorneys for Defendant AbbVie Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2018, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBVIE INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)** with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Kathryn L. Dore*
Attorney for Defendant AbbVie Inc.