IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRY PAULSEN, | |
| Plaintiff, | No. 15-cv-04144 |
| v. | Judge John F. Kness |
| ABBOTT LABORATORIES, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

More than 17 years ago, Plaintiff Terry Paulsen received two injections of the drug Lupron to treat her endometriosis. Plaintiff contends in this suit governed by Georgia tort law that those injections caused her multiple injuries, including permanent damage to her bones and joints. After protracted litigation that has pared down both the number of defendants and surviving causes of action, Defendants now seek summary judgment on Plaintiff's two remaining claims: (1) strict liability failure to warn against Defendants Abbott Laboratories, Inc. ("Abbott") and AbbVie, Inc. ("AbbVie"); and (2) negligent misrepresentation against Abbott.

Both of Plaintiff's claims fail as a matter of law. Plaintiff's strict liability failure-to-warn claim is time-barred by Georgia's 10-year statute of repose. Plaintiff's separate claim for negligent misrepresentation also fails because, under Georgia law, it is both subsumed within the failure-to-warn claim and devoid of evidentiary support that Abbott made *any* representations, let alone false ones, regarding

Lupron. Accordingly, and as explained more fully below, the Court grants Defendants' motion for summary judgment.

## I. BACKGROUND

Familiarity with the factual background and procedural history of this case, as described in detail in the Court's previous orders on Defendants' motions to dismiss (Dkts. 111, 181), will be assumed for purposes of this opinion. In the interest of completeness, however, the Court provides the following summary of the undisputed facts relevant to the resolution of Defendants' motion for summary judgment.

### A. Relevant Facts

Plaintiff Terry Paulsen is a Georgia resident who suffered from endometriosis. (Defendants' Statement of Material Facts ("DSOF"), Dkt. 198 ¶¶ 1, 32.) To treat Plaintiff's condition, Dr. Gregory Perry prescribed Lupron Depot 3.75 mg ("Lupron")—an injection—and provided the drug to Plaintiff in his office via two separate doses administered on February 11, 2004 and March 16, 2004. (*Id.* ¶ 4.) Following the injections, Plaintiff began experiencing a variety of health problems, including "severe bone and joint pain" (DSOF ¶ 21), memory loss, and fevers (*id.* ¶ 26). In May 2010, Plaintiff was diagnosed with osteoporosis. (Plaintiff's Statement of Material Facts ("PSOF"), Dkt. 206 ¶ 19.)

At the time of Plaintiff's injections, an entity called TAP Pharmaceutical Products, Inc. held the New Drug Application ("NDA") for Lupron. (DSOF ¶ 6.) A separate entity, Takeda Chemical Industries, Ltd. ("Takeda") manufactured Lupron's active ingredient in Japan and then shipped lots of pre-filled syringes to the

2

United States for distribution. (*Id.* ¶¶ 8, 10.) Abbott received these lots, packaged them, labeled them, performed quality control checks, and then distributed them within the United States as directed by TAP. (*Id.* ¶ 11-13.)

### B. Procedural History

Plaintiff filed her first complaint in the U.S. District Court for the Eastern District of New York on April 20, 2010. (*See* Dkt. 1, *Cardenas v. Abbott Labs.*, No. 10-CV-1745-RRM-VVP (E.D.N.Y.).) That complaint named as defendants, among others, Abbott, TAP, and Takeda, but not current Defendant AbbVie. (*See* Dkt. 111 at 5.) The New York case was transferred to this District, and Takeda was dismissed because Plaintiff never served it. (*Id.*) After several years of litigation, Plaintiff voluntarily dismissed her claims on May 30, 2014. (*See* Dkts. 143, 144, *Cardenas v. Abbott Labs.*, No. 11-cv-04860 (N.D. Ill.)) Plaintiff moved to reopen her case on April 24, 2015, but the court denied her request. (*Id.* Dkts. 146, 147.)

Plaintiff then filed her first complaint in this action on May 11, 2015 and named Abbott, TAP, and Takeda—but again not AbbVie—as defendants. (Dkt. 1.) That complaint asserted several causes of action against all defendants, including various product liability, negligence, warranty, and misrepresentation claims. (*See generally id.*) Following a motion to dismiss, several amended complaints, the addition of AbbVie as a defendant, another motion to dismiss, and the reassignment of this case to the undersigned judge, the only claims that remain in this litigation are strict liability failure to warn (Count II) against both AbbVie and Abbott and a negligent misrepresentation claim (Count V) against Abbott only. (*See* Dkts. 111,

3

181.)

## II. LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). At the summary-judgment stage, a district court must view the facts in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). But as "the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

## III. DISCUSSION

### A. Strict Liability Failure to Warn (Count II)

#### 1. *Statute of repose*

First, Defendants argue that the Court should dismiss Plaintiff's claim for strict liability failure to warn (Count II) as time-barred by Georgia's 10-year statute of repose. (Dkt. 197 at 13-14.) Georgia's statute bars any strict liability action brought more than "ten years from the date of the first sale for use or consumption of the

4

personal property causing or otherwise bringing about the injury,"[1] O.C.G.A. § 51-1-11(b)(2), and thus "destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists." *Wright v. Robinson*, 426 S.E.2d 870, 872 (Ga. 1993).

Plaintiff does not dispute that the last time she consumed Lupron was in March 2004. (Pl.'s Resp. DSOF ¶ 4.) Under Georgia's statute of repose, she thus had until March 2014 to bring her strict liability claim. She did not file this lawsuit, however, until May 11, 2015 (*see* Dkt. 1)—more than a year after the expiration of the statute of repose.

Plaintiff argues, however, that the statute's carve-out for "failure to warn claims" saves her claim. (Dkt. 205 at 9.) Although the statute contains an exception providing that "[n]othing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer[,]" O.C.G.A. § 51-1-11(c), that exception applies only to *negligent* failure-to-warn claims, not *strict liability* failure-to-warn claims. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1307 (11th Cir. 1999) ("the clear, unambiguous language of the statute . . . exempts *only* negligence actions"); *see also*

---

[1] In his order on Defendants' first motion to dismiss, Judge Dow determined that Illinois procedural law and Georgia substantive law applied to this action. (Dkt. 111 at 24.) Because statutes of repose are considered substantive law, Georgia's statute of repose applies to Plaintiff's claim. *See Freeman v. Williamson*, 890 N.E.2d 1127, 1133 (Ill. App. Ct. 2008) ("A statute of repose differs from a statute of limitations in that it is substantive rather than procedural") (quoting *Ferguson v. McKenzie*, 780 N.E.2d 660, 664 (Ill. 2001)). Plaintiff does not dispute that Georgia's statute of repose applies to her claims, but instead suggests that Illinois's "savings statute trumps its statute of repose." (Dkt. 205 at 9.) This argument is neither here nor there, as the Georgia statute of repose, not that of Illinois, applies to Plaintiff's claims.

5

*In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 1:14 ML 02570 RLY TAB, 2017 WL 2362003, at *3 (S.D. Ind. May 31, 2017) (strict liability failure-to-warn claims fall outside the ambit of the statute of repose); *Meraz v. Ford Motor Co.*, No. CV 13 00260 PSG (VBKx), 2014 WL 12558123, at *11 (C.D. Cal. June 13, 2014) (same); *Thomas v. Hubtex Maschinenbau GmbH & Co KG*, No. CIV.A. 7:06-CV-81(HL), 2008 WL 4371977, at *9 (M.D. Ga. Sept. 23, 2008) (same).

Because Plaintiff brought her strict-liability claim outside the period allowed by Georgia's 10-year statute of repose, and because the statute's exception for negligent failure-to-warn claims does not apply to Plaintiff's claims, her claim is time-barred. Accordingly, the Court grants Defendants' motion for summary judgment as to Count II.

### 2. *Liability for "product sellers"*

Although Georgia's 10-year statute of repose warrants dismissal of Plaintiff's strict liability failure-to-warn claim, Defendants advance several other arguments that merit discussion. First, Abbott argues that Georgia law allows plaintiffs to bring strict liability claims only against a product's manufacturer, and thus Abbott, which did not manufacture Lupron, cannot be held liable for injuries that the product may have caused to Plaintiff. (Dkt. 197 at 15.)

Georgia law, of course, provides for strict liability for defective products. A manufacturer of personal property sold as new is liable in tort to "any natural person who may use, consume, or reasonably be affected by the property" and who suffers an injury to his person or property "because the property when sold by the manufacturer

6

was not merchantable] and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." O.C.G.A. § 51-1-11(b)(1). "Product sellers," however, are not considered "manufacturers" and are expressly exempted from such strict liability claims. *Id.* § 51-1-11.1(b) ("For purposes of a product liability action based in whole or in part on the doctrine of strict liability in tort, a product seller is not a manufacturer as provided in Code Section 51-1-11 and is not liable as such"). The statute defines "product seller" as one who "sells and distributes . . . prepares . . . packages; labels; markets; or assembles pursuant to a manufacturer's plan . . . or otherwise is involved in placing a product in the stream of commerce." *Id.* § 51-1-11.1(a). Thus "[t]he statutory exception to strict liability for mere sellers explicitly applies to those who package, label, or market the product." *In re Stand 'N Seal, Prods. Liab. Litig.*, No. 1:07 MD1804-TWT, 2009 WL 2145911, at *3 (N.D. Ga. July 15, 2009).

Plaintiff contends that Abbott was not merely a "product seller," but was instead a "co-manufacturer" of Lupron because it had "an active role in producing/assembling [the drug] and placing it in the stream of commerce." (Dkt. 205 at 4, 6.) Plaintiff cites the steps Abbott took in Lupron's "production and distribution processes," including: (1) receiving pallets of syringes pre-filled with the active pharmaceutical ingredient in Lupron and a diluent; (2) storing these materials in a temperature-controlled area; (3) "assembling the final Lupron" product; and (4) "[f]inishing," labelling, and packaging Lupron for distribution. (*Id.* at 5.) Plaintiff also argues that Abbott played other "important role[s] in the manufacturing

7

process," including testing and reporting "the absence of out specification in chemicals" and that this made Abbott more than just "a mere seller of Lupron, or even just a packager and labeler, but a co-manufacturer, subject to liability for failure to warn under Georgia law." (*Id.* at 6.) Without Abbott, Plaintiff contends, Lupron could not have been "place[d] . . . in the stream of commerce." (*Id.*)

Abbott does not dispute that it engaged in these activities. As a result, the Court must determine whether, as a matter of law, these undisputed facts demonstrate that Abbott's activities related to Lupron were such that Abbott can be considered a "manufacturer" under Georgia law and subject to liability for failure to warn under O.C.G.A. § 51-1-11.1.

At this stage, the Court is not persuaded that Abbott's Lupron-related activities are such that Abbott can be considered merely a "product seller" or "packager" that is exempt from Georgia's strict liability statute. To be sure, Defendants rely on *Freeman v. United Cities Propane Gas of Georgia, Inc.*, in which the Middle District of Georgia noted that O.C.G.A. § 51-1-11.1 is "a legislative attempt to confine strict liability to *actual manufacturers*." 807 F. Supp. 1533, 1540 (M.D. Ga. 1992) (emphasis added). Before the passage of the statute, an entity "that labeled and marketed a product as its own was a manufacturer," but the Georgia legislature enacted the statute to "eliminate[ ] this type of 'manufacturer' from strict liability under Georgia law." *Id.* Accordingly, the defendant propane tank retailer in *Freeman*, who neither designed the product, manufactured a component part, nor assembled the component parts, but merely labeled and marketed the product, could not be held

8

strictly liable under Georgia law.

Although the undisputed facts do not establish that Abbott played a role in the manufacture or design of the active ingredient in Lupron, Abbott, unlike the retailer in *Freeman*, did more than merely label and market the product. Abbott's other activities—such as assembling the finished Lupron product and performing quality control checks—cannot, as a matter of law, be viewed as so inconsequential as to exclude Abbott from the category of manufacturer for purposes of Georgia law. That question would require resolution by the trier of fact.

In opposition to Defendants' contention that Abbott is not a manufacturer of Lupron under Georgia law, Plaintiff relies on *Nelson v. C.M. City, Inc.*, in which the Court of Appeals of Georgia found that a television manufacturer defendant was not exempt from Georgia's strict liability statute as a mere "product seller" under O.C.G.A. § 51-1-11.1. *Nelson v. C.M. City, Inc.*, 463 S.E.2d 902, 905 (Ga. Ct. App. 1995), *rev'd on other grounds sub nom. NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769 (Ga. 1996). According to *Nelson*, summary judgment in the defendant's favor was error because the defendant "sold a product made and assembled pursuant to *its own* 'plan, intention, design, specifications, or formulation' " instead of "*some other's* plan intention, design, specifications, or formulation." *Nelson*, 463 S.E.2d at 905. In this case, however, the undisputed facts do not clearly show whether Abbott "made or assembled" Lupron either by its *own* or instead *another manufacturer's* design and specifications. Although Abbott was not the NDA-holder for Lupron and did not design the active ingredient in the product, it is unclear exactly which entity created

9

the specifications for assembly and quality control. If Abbott had an active role in the design and creation of the specifications for Lupron's assembly, it could be liable as a manufacturer under Georgia law.[2]

In summary, the Court cannot say with certainty, based on the undisputed facts and the authorities the parties have presented to it, that Abbott was a mere "product seller" of Lupron under O.C.G.A. § 51-1-11.1 and thus exempt from strict liability. But, as described above, Georgia's 10-year statute of repose nonetheless bars Plaintiff's strict liability claim. Accordingly, the Court grants summary judgment in favor of Defendants on Plaintiff's strict liability failure-to-warn claim (Count II).

    3.    *Preemption*

Abbott also contends that Plaintiff's strict liability failure-to-warn claim is preempted. (Dkt. 197 at 15-16.) As Abbott sees it, any successful failure-to-warn claim would impose on it a duty to make changes to Lupron's label, which Abbott is unable to do under FDA regulations because it does not hold the New Drug Application ("NDA") for Lupron.

Under the Supremacy Clause of the Constitution, the laws of the United States "shall be the supreme Law of the Land . . . , any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. It is "basic to this constitutional command that all conflicting state provisions be without effect."

---

[2] Plaintiff finds significance in Abbott's description of Lupron as being "[m]anufactured for TAP Pharmaceuticals, Inc. . . . by Abbott Laboratories" in its March 2, 2004 New Drug Application filed with the FDA. (Dkt. 205 at 5 (citing Exh. A, NDA-20-263/S-204/S-024); Dkt. 207-1 at 11.) But just because Abbott may have described itself as Lupron's "manufacturer" in the NDA or in other documents does not make it a legal "manufacturer" under Georgia law.

10

*Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (cleaned up). As the Supreme Court has recognized, state law is preempted under the Supremacy Clause in several circumstances, one of which is "impossibility," *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 488 (2013)—that is, where "state law is pre-empted to the extent that it actually conflicts with federal law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). This type of preemption is also referred to as "conflict preemption." *Id.* at 79 n.5.

Several recent Supreme Court cases have addressed preemption in the drug context. In *Wyeth v. Levine*, a consumer of a branded drug sued the branded drug manufacturer on negligence and strict-liability theories for failure to provide an adequate warning on the drug's labeling. 555 U.S. 555, 559-60 (2009). But because the FDA's processes permitted the brand-name manufacturer to "unilaterally strengthen" the warning on the labeling without waiting for FDA approval, the Supreme Court held that the consumer's labeling claims were not preempted. *Id.* at 568-69, 571, 573.

In *PLIVA, Inc. v. Mensing*, consumers of generic drugs sued the generic drug manufacturers for failure to provide adequate warnings on the drugs' labels. 564 U.S. 604, 610 (2011). Unlike in *Wyeth*, however, the Supreme Court held that the consumers' labeling claims were preempted because the generic drug manufacturers could not "independently" change the labeling while remaining in compliance with federal law. *Id.* at 618-20. Under the "duty of sameness" requirement of federal law, the generic drug manufacturers were required to use labeling identical to the labeling of the equivalent brand-name drug. *Id.* at 613 ("[T]he warning labels of a brand-name

11

drug and its generic copy must always be the same—thus, generic drug manufacturers have an ongoing federal duty of 'sameness' "). As a result, the generic drug manufacturers could not change the generic drug's labeling absent a change to the brand-name drug's labeling. *Id.* at 614-15. Because any change that the generic drug manufacturers made to the drug's labeling to comply with duties arising under state tort law would have violated federal law, the state tort claims were preempted. *Id.* at 618.

Most recently, in *Mutual Pharmaceutical Co. v. Bartlett*, a consumer of a generic drug brought a design defect claim against a generic manufacturer for failure to ensure the drug was reasonably safe. 570 U.S. 472 (2013). Under New Hampshire law, a drug manufacturer could satisfy its duty to ensure that its drug was reasonably safe "either by changing a drug's design or by changing its labeling." *Id.* at 482. Because the generic drug manufacturer was unable to change the drug's composition, however, the only way for it to fulfill its state-law duty and "escape liability" was by changing the labeling. *Id.* at 475, 483-84. But once the FDA approves a drug, whether brand-name or generic, the manufacturer may not make "any major changes to the 'qualitative or quantitative formulation of the drug product, including active ingredients, or in the specifications provided in the approved application.' " *Id.* at 477 (quoting 21 C.F.R. § 314.70(b)(2)(i)). Generic drug manufacturers "are also prohibited from making any unilateral changes to a drug's label." *Id.* (citing 21 C.F.R. §§ 314.94(a)(8)(iii), 314.150(b)(10)). In view of that framework, the Supreme Court concluded that, under *Mensing*, federal law prohibited the generic drug manufacturer

12

"from taking the remedial action required to avoid liability" under state law (namely, changing the labeling). *Id.* at 475, 486-87 (citing *Mensing*, 564 U.S. 604). As a result, the consumer's design-defect claim was preempted.

Abbott argues that, because it did not hold the NDA for Lupron at the time of Plaintiff's injections, it did not have the authority under federal law to alter Lupron's warning labeling. (Dkt. 197 at 15-16.) Because Plaintiff's state-law strict liability failure-to-warn claims are based on deficient labeling, Abbott argues, those state-law claims are preempted under *Bartlett*. (*Id.*)

Abbott is correct that Plaintiff's strict liability failure-to-warn claim against Abbott is preempted. As the Supreme Court explained in *Bartlett, Mensing* "makes clear that federal law prevents generic drug manufacturers from changing their labels" to avoid tort liability under state law. 570 U.S. at 473. Although the record is unclear as to whether Abbott manufactured or merely repackaged and resold Lupron, the key fact is that, as with the defendant in *Bartlett*, Abbott did not hold the drug's NDA. (Pl.'s Resp. DSOF ¶ 6.) A drug company that does not hold an NDA, no matter how closely affiliated with the NDA holder, is "powerless to submit label changes to the FDA." *Smith v. Teva Pharms. USA, Inc.*, 437 F. Supp. 3d 1159, 1166 (S.D. Fla. 2020). Any claims against Abbott related to the products' labeling are thus preempted. *See id.*

Numerous authorities confirm that the FDA's regulations do not "contemplate a distributor of a brand drug, albeit a distributor closely affiliated with the NDA holder, initiating changes to an approved NDA." *Id.* at 1165; *accord In re Darvocet,*

13

*Darvon, and Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 940 (6th Cir. 2014) (affirming dismissal of state claims against non-NDA-holder drug manufacturer as preempted because it had "no more power to change the label than did [the generic manufacturer]"); *Brazil v. Janssen Rsch. & Dev. LLC*, 196 F. Supp. 3d 1351, 1364-65 (N.D. Ga. 2016) (state claims preempted where NDA was held by a related company); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No.2243 (JAP-LHG), 2012 WL 181411, at *3 (D.N.J. Jan. 17, 2012) (defendant drug distributor had no power to alter the drug's labeling because "[t]hat power lies with the applicant who filed the [NDA]"); *Warren v. Boehringer Ingleheim Pharms. Inc.*, No. 1:16-cv-01326-SEB-DML, 2017 WL 3970666, at *15 (S.D. Ind. Sept. 8, 2017) ("like a generic manufacturer, no matter what specific duties [state law] might impose on it as to the design and labeling of [the drug], [the non-NDA-holder] is prohibited by federal law from observing them and the [consumers'] claims thus are pre-empted").

To be sure, Plaintiff contends that, under *Wyeth v. Levine*, 555 U.S. 555 (2009), failure-to-warn claims against drug manufacturers "generally are not preempted." (Dkt. 205 at 7.) That is too broad reading of *Wyeth*, and in any event, the facts in *Wyeth* are not analogous here. In *Wyeth*, the Supreme Court held that state-law failure-to-warn claims brought against a drug's NDA-holding manufacturer were not preempted because federal law permitted the NDA-holder to modify the drug's warning label to escape state-law liability. *Wyeth*, 555 U.S. at 568. But Abbott did not hold Lupron's NDA. *See Stacel v. Teva Pharms., USA,* 620 F. Supp. 2d 899, 904 (N.D. Ill. 2009) ("The Court's analysis in *Levine* is not directly controlling law since *Levine*

14

dealt with a new drug manufacturer, whereas Teva is a generic drug manufacturer"). *Mensing* and *Bartlett*, which involved suits against non-NDA holding generic drug manufacturers, are more on-point here.

Finally, Plaintiff argues that Abbott is TAP's successor in interest, and that Abbott is thus liable for any failure-to warn-claims that Plaintiff has against TAP. (Dkt. 205 at 7.) But as Judge Dow has already explained, TAP's successor in interest is AbbVie, not Abbott. (Dkt. 181 at 30.) Abbott, as a non-NDA holder, had no authority to change Lupron's labeling; it thus could not "independently do under federal law what state law requires of it." *Mensing*, 564 U.S. at 620. As a result, Plaintiff's strict liability failure-to-warn claim against Abbott is preempted. *See id.*

## B. Negligent Misrepresentation (Count V)

Abbott also moves for summary judgment on Plaintiff's negligent misrepresentation claim. (SAC ¶¶ 58-63.)[3] To succeed on a claim for negligent misrepresentation claim under Georgia law, a plaintiff must demonstrate: "(1) the defendant's negligent supply of false information to foreseeable persons . . . ; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Hardaway Co. v. Parsons, Brinckerhoff,*

---

[3] In her Second Amended Complaint (Dkt. 143), Plaintiff brought a claim for negligent misrepresentation against Defendants Abbott, AbbVie, TAP, and TPUSA (*See* Dkt. 143 ¶¶ 58-63.) As discussed above, however, Judge Dow dismissed all claims against Defendants TAP and TPUSA with prejudice. (*See* Dkt. 181.) By the same order, Judge Dow expressed his "skepticism that Plaintiff may actually pursue" a claim for negligent misrepresentation, but, regardless of the availability of such a claim, dismissed Plaintiff's negligent misrepresentation claim against AbbVie because Plaintiff did not identify "any specific misrepresentations by TAP on which Plaintiff's physician relied." (*Id.* at 29-30.) Only Plaintiff's claim against Abbott remains.

15

*Quade & Douglas, Inc.*, 479 S.E.2d 727, 729 (Ga. 1997). In Georgia, a negligent misrepresentation claim "is viable only when a plaintiff can allege and prove direct communication with a defendant and specific reliance on that defendant's communication." *Patel v. Patel*, 761 F. Supp. 2d 1375, 1382 (N.D. Ga. 2011) (citing *Holmes v. Grubman*, 691 S.E.2d 196, 200 (Ga. 2010)). In the case of prescription drugs, however, a plaintiff need only allege a communication made with a patient's physician, as a drug manufacturer is not normally required to directly warn the patient of danger in its use. *See Frazier v. Mylan, Inc.*, 911 F. Supp. 2d 1285, 1290 (N.D. Ga. 2012) (citing *Presto v. Sandoz Pharms. Corp.* 487 S.E.2d 70 (Ct. App. Ga. 1997)). This is because Georgia adheres to the learned intermediary doctrine, which provides that the manufacturer's duty to warn runs to the prescribing physician rather than to the patient. *Id.*

But as Defendants accurately state in their motion, Georgia "does not recognize a claim for misrepresentation apart from a failure to warn claim in products liability cases." *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX-DGC, 2018 WL 1256768, at *7 (D. Ariz. Mar. 12, 2018). *See also Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1357 (N.D. Ga. 2008) (under Georgia law, "misrepresentation claims against a manufacturer properly collapse into failure to warn claims"); *Brazil v. Janssen Rsch. & Dev., LLC*, 249 F. Supp. 3d 1321, 1340 (N.D. Ga. 2016) (under Georgia law, "there [are] no misrepresentation claims for products liability distinct from failure to warn claims"); *Gaddy v. Terex Corp.*, No. 1:14-CV-1928-WSD, 2017 WL 3476318, at *5 (N.D. Ga. May 5, 2017) (same). Plaintiff makes no attempt to

16

distinguish this authority. (*See generally* Dkt. 205 at 9-10.) In the absence of any Georgia authority holding that such a claim is available, Plaintiff's claim for negligent misrepresentation must fail as a matter of law.

Even if a negligent misrepresentation claim were available under Georgia law, Plaintiff's claim would still fail, as the undisputed evidence shows that Abbott did not make any representations regarding Lupron, let alone any false representations, to Plaintiff or her prescribing physician (Dr. Gregory Perry). In the Second Amended Complaint, Plaintiff alleges that, before her Lupron injection, "an Abbott drug detail person personally contacted Plaintiff's physician . . . and expressly represented the safety and effectiveness of Lupron . . . [and] that there is no long term adverse effect." (SAC ¶ 50.)[4] (*See also* Dkt. 205 at 9 ("Plaintiff's negligent misrepresentation claim . . . is based on Abbott's sales representative making affirmative misrepresentations upon which Plaintiff relied to her detriment")).

It is undisputed that Plaintiff was injected with Lupron in February and March 2004. (DSOF ¶ 4.) But the evidence developed in discovery shows, however, that Abbott did not market or sell Lupron at that time. (*Id.* ¶ 16.) None of Abbott's salespeople called on doctors regarding Lupron or delivered any samples of Lupron

---

[4] This allegation is not included in Plaintiff's negligent misrepresentation count (Count V) but is instead included in her fraudulent misrepresentation count (Count IV) and is apparently incorporated into Count V by reference. (*See* SAC ¶ 58.) As Judge Dow previously noted, this style of pleading "is a dangerous way to proceed, for it is neither this Court's, nor the Defendants', duty to 'piece together allegations and construct a claim it suspects a plaintiff might have intended to bring.'" (Dkt. 181 at 29) (quoting *Intellicig USA LLC v. CN Creative Ltd.*, No. 1-15-CV-01832-AT, 2016 WL 5402242, at *10 (N.D. Ga. July 13, 2016).) Nonetheless, this Court, as did Judge Dow, understands this alleged representation to form the basis of Plaintiff's negligent misrepresentation claim.

17

to them. (*Id.*) Abbott has no record of any of its representatives having called Dr. Perry at any time before Plaintiff's Lupron injections, and Plaintiff admitted at her deposition that she has no knowledge of any conversations between any sales representative and Dr. Perry regarding Lupron. (*Id.* ¶ 18.) Even if negligent misrepresentation were available to Plaintiff as a cause of action under Georgia law, therefore, the undisputed evidence—as opposed to Plaintiff's unsupported allegation—shows that Abbott did not make any representations to Plaintiff's physician regarding Lupron that could give rise to such a claim. Accordingly, the Court grants Defendants' motion for summary judgment as to Count V.

### C. Statute of Limitations

Finally, Defendants argue that the Court should grant summary judgment in their favor because Plaintiff's claims are barred by Illinois's two-year statute of limitations for personal injury claims. (Dkt. 197 at 19.) Because Defendants are entitled for independent reasons to summary judgment on both remaining counts, however, the Court declines to address Defendants' statute of limitations arguments.

## IV. CONCLUSION

Defendants' motion for summary judgment (Dkt. 196) is granted. A final judgment order will be entered separately.

SO ORDERED in No. 15-cv-04144.

Date: September 28, 2021

_____
JOHN F. KNESS
United States District Judge